[No. D059333. Fourth Dist., Div. One. May 30, 2012.]

RYAN N. BOWERS et al., Plaintiffs and Respondents, v.
RAYMOND J. LUCIA COMPANIES, INC., Defendant and Appellant.

## COUNSEL

Higgs, Fletcher & Mack, James M. Peterson, Victoria E. Fuller and Loren G. Freestone for Defendant and Appellant.

Thorsnes Bartolotta McGuire, Vincent J. Bartolotta, Jr., Renee N. Galente, Karen R. Frostrom; McKenna Long & Aldridge, Charles A. Bird and Aaron T. Winn for Plaintiffs and Respondents.

## OPINION

### McCONNELL, P. J.—

## INTRODUCTION

Raymond J. Lucia Companies, Inc. (defendant), appeals from a judgment enforcing a settlement agreement resulting in a binding mediation award in favor of Ryan N. Bowers, Marc Seward, and Jeffrey LaBerge (plaintiffs). Defendant contends we must reverse the judgment as the underlying settlement agreement is unenforceable because (1) defendant never agreed to resolve the parties' dispute through binding mediation; (2) a contract term providing for binding mediation is necessarily too uncertain to be enforceable; and (3) binding mediation is not among the constitutionally and statutorily permissible means of waiving jury trial rights. We conclude there is substantial evidence to support the trial court's determination defendant agreed to the binding mediation procedure utilized in this case. We further conclude that the binding mediation provisions in the parties' settlement agreement were not too uncertain to be enforceable. Finally, we conclude binding mediation is not a constitutionally or statutorily prohibited means of waiving jury trial rights where, as here, the parties have agreed to settle their dispute in a nonjudicial forum. We, therefore, affirm the judgment.

## BACKGROUND

Plaintiffs sued Raymond J. Lucia, Sr. (Lucia), defendant, and other entities for defamation and related business torts. Lucia filed an arbitration proceeding against plaintiffs asserting similar claims.[1]

The trial court subsequently determined plaintiffs were compelled to arbitrate their claims against Lucia. Plaintiffs dismissed Lucia from their lawsuit, allowing their arbitration with him to proceed separately from their lawsuit against defendant. The arbitration proceeding commenced a few months before the scheduled trial in this case. After several days of arbitration, the parties agreed to settle their dispute before the arbitration panel reached a decision. In informing the arbitration panel of the settlement, the following exchanges occurred:

"[DEFENDANT'S COUNSEL]: Through the efforts of the parties today and also the panel being patient, we've been able to resolve this arbitration to the parties' satisfaction. As a consequence, [Lucia] is dismissing all claims

---

[1] Because it is not necessary for our resolution of the issues raised on appeal, we omit a summary of the alleged facts underlying the parties' claims.

against the [plaintiffs], with prejudice. And, as a result, we are also encompassing the state court matter, which is set for trial in October, and we are agreeing to bring that case to binding mediation with a component which, if it's not resolved at mediation, rolls over to arbitration. I guess it's—it's mediation with a binding arbitration component following.

"[CHAIRMAN]: Med/Arb.

"[PLAINTIFFS' COUNSEL]: The mediator has the ability to decide the case at the end of the day.

"[DEFENDANT'S COUNSEL]: Correct.

"[PLAINTIFFS' COUNSEL]:—if the parties don't resolve it.

"[DEFENDANT'S COUNSEL]: So we're resolving this matter here with respect to each other. We are taking the state court case and taking the parties in that matter, agreeing to go mediate with a jointly—a mutually-acceptable mediator. And to the extent we don't resolve it that day, it becomes a mediat[ion]—an arbitration with a range of between $100,000 and $5 million as the range that he will then have the freedom to choose after we present our cases to him or her during mediation.

"[CHAIRMAN]: Understood."

Following a brief discussion about ancillary matters, the chairman summarized, "So your agreement encompasses dismissal with and of the arbitration and the Superior Court case based upon the terms that you've agreed to, to mediate in a Med/Arb, baseball high-low atmosphere with a mediator of your choosing, to be chosen within the next several weeks."

After a brief discussion about allocating forum fees, the chairman asked, "Anything else you want to put on the record . . . [?]" Defendant's counsel responded, "I think that encompasses the essential terms of our agreement." Plaintiffs' counsel agreed, stating, "I believe that's correct. Yes."

Within a week after the arbitration, the parties signed a "Settlement Agreement and Release" (settlement agreement). Paragraph II.2 of the settlement agreement provided this case "shall be placed on the Superior Court dismissal calendar. The Parties shall then proceed to a mediation/binding baseball arbitration with a mutually agreed-upon neutral within sixty days of the execution of this agreement. To wit, the Parties shall participate in a full day mediation. If, at the end of that mediation, the Parties have failed to reach an agreement, the mediator shall be empowered to set the amount of the

judgment in favor of Plaintiffs against Raymond J. Lucia Companies, Inc. at some amount between $100,000 and $5,000,000, such binding mediator judgment to then be entered as a legally enforceable judgment in San Diego Superior Court without objection of any Party."

Paragraph II.3 of the settlement agreement provided, "Immediately upon execution of this agreement, the Parties shall advise the Court to place the case on the dismissal track. Should the Parties agree upon a voluntary compromise of the San Diego Superior Court case, the case shall be dismissed with prejudice. Should the matter proceed to binding baseball arbitration, the Parties shall enter the arbitrated amount as an enforceable stipulated judgment in the case."

At the mediator's request, the parties later modified the portion of paragraph II.2 of the settlement agreement beginning with "To wit" to provide, "To wit, the Parties shall participate in a full day mediation. If, at the end of that mediation, the Parties have failed to reach an agreement, the Plaintiffs (Bowers, Seward, and LaBerge) shall provide to the mediator their last and final demand, which demand shall be some amount between $100,000 and $5,000,000, and the Defendants (Companies, Wealth Management, and Enterprises) shall provide to the mediator their last and final offer which offer shall be some amount between $100,000 and $5,000,000. The mediator shall then be empowered to set the amount of the judgment in favor of Plaintiffs against Raymond J. Lucia Companies, Inc. by choosing either Plaintiffs' demand or Defendants' offer, such binding mediator judgment to then be entered as a legally enforceable judgment in San Diego Superior Court without objection of any Party." The amendment further provided, "This amendment shall not impact any section of the Settlement Agreement not referenced above."

The parties participated in a full-day mediation with the mediator. At the end of the day, the parties had not reached an agreement. The mediator asked plaintiffs for their final demand and defendant for its final offer. Plaintiffs demanded $5 million and defendant offered $100,000. The mediator did not reach an immediate decision, but allowed the parties to continue to submit information for his consideration. He also met with defendant and defendant's counsel. The mediator ultimately selected the $5 million number.

Defendant obtained new counsel, who wrote the mediator a letter requesting that the mediator either reopen the proceeding to allow for further information exchanges and interaction, or reconsider his decision. Nothing in the record indicates defendant or defendant's counsel ever requested the mediator conduct a traditional arbitration proceeding or objected to the mediator's failure to move from the mediation into a traditional arbitration proceeding.

Plaintiffs petitioned to confirm the mediator's award. Defendant opposed the petition, arguing the trial court could not confirm the award because it was a mediation award, rather than an arbitration award. The trial court agreed and declined to confirm the award as an arbitration award. Instead, the trial court enforced the settlement agreement and subsequent mediator's award under Code of Civil Procedure[2] section 664.6.[3]

The trial court explained, "Despite their use of undefined legal terms such as 'mediation with a binding arbitration component' and 'mediation/binding baseball arbitration', the parties clearly agreed in writing that the mediator would decide the amount of the judgment with the 'binding mediator judgment to then be entered as a legally enforceable judgment in San Diego Superior Court without objection of any Party.' The parties agreed to a day long mediation whereby if they did not resolve the case, the mediator would determine the amount of the judgment. Nowhere in the settlement agreement does it contain any procedure for a formal arbitration where each side would present witnesses and evidence as defendant now maintains. It appears the use of the term 'binding baseball arbitration' was meant to allow the mediator to pick the amount. Further, any ambiguity in that term was resolved by the amendment requiring the mediator to pick either plaintiffs' demand or defendant's offer.

"This interpretation is further bolstered by the representations made in a transcript dated July 20, 2010 prior to the formalized settlement agreement. There clearly is some confusion about what to call the procedure they would use. Nonetheless, counsel for defendant agreed that the *mediator* had the ability to decide the case at the end of the day if the parties did not resolve it. Counsel for defendant further stated that the *mediator* would have the freedom to choose between a range of $100,000 and $5 million 'after we present our cases to him or her during *mediation*.' There is no reference to an arbitrator choosing the number after a presentation of evidence apart from the mediation. The court notes that this case involves sophisticated parties and knowledgeable counsel who could have explicitly provided for a separate arbitration had that been what they intended." Consistent with its ruling, the trial court subsequently entered a $5 million judgment for plaintiffs.

---

[2] Further statutory references are also to the Code of Civil Procedure unless otherwise stated.

[3] Plaintiffs argue the trial court was mistaken and could have confirmed the award as an arbitration award. However, as plaintiffs did not file a cross-appeal, the propriety of this aspect of the trial court's decision is not before us. Similarly, as neither party disputes a motion under section 664.6 is a permissible mechanism for enforcing the parties' settlement agreement, we have no occasion to address this aspect of the trial court's decision.

Defendant moved for reconsideration, to vacate the judgment, and for a new trial. The trial court denied the motion, finding once again that the parties' settlement agreement was enforceable and the parties had agreed to binding mediation, rather than a two-step mediation and binding arbitration process.

## DISCUSSION

### I

#### *Overview of Section 664.6*

■ "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court . . . , for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement." (§ 664.6.) "Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit." (*Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 809 [71 Cal.Rptr.2d 265] (*Weddington*).) A trial court "hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment." (*Id.* at p. 810.) The trial court may not "create the material terms of a settlement, as opposed to deciding what terms the parties themselves have previously agreed upon." (*Ibid.*, italics omitted.) Thus, a trial court cannot enforce a settlement under section 664.6 unless the trial court finds the parties expressly consented, in this case in writing, to the material terms of the settlement. (60 Cal.App.4th at p. 810.)

### II

#### *Mutual Consent*

Defendant contends we must reverse the trial court's judgment because the settlement agreement is unenforceable due to lack of mutual consent. More particularly, defendant contends it did not agree to settle the parties' dispute through binding mediation. Rather, it agreed to settle the dispute with a mediation proceeding which, if unsuccessful, would be followed by a binding arbitration proceeding that included an evidentiary hearing.

■ "A settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." (*Weddington, supra,* 60 Cal.App.4th at p. 810.) ■ One of the essential elements of an

enforceable contract is mutual consent. (*Id.* at p. 811.) For consent to be mutual, the parties must all agree on the same thing in the same sense. (*Ibid.*; Civ. Code, §§ 1580, 1636.) " 'The existence of mutual consent is determined by objective rather than subjective criteria, the test being what the outward manifestations of consent would lead a reasonable person to believe.' " (*Weddington, supra*, at p. 811.) "If there is no evidence establishing a manifestation of assent to the 'same thing' by both parties, then there is no mutual consent to contract and no contract formation." (*Ibid.*)

Here, the trial court found that, notwithstanding any labeling, the parties mutually agreed to a full-day mediation and, if there was no resolution at the end of the day, the mediator could make a binding award by selecting from either plaintiffs' final demand or defendant's final offer. We review the trial court's finding for substantial evidence. (*In re Marriage of Assemi* (1994) 7 Cal.4th 896, 911 [30 Cal.Rptr.2d 265, 872 P.2d 1190].)

The transcript of the arbitration proceeding at which the parties described the terms of their settlement agreement for the record indicates the parties agreed to a full-day mediation, at the end of which the mediator could make a binding award between $100,000 and $5 million if the mediation was not successful. Nothing in the transcript indicates the parties ever contemplated a failed mediation would be followed by an arbitration that included an evidentiary hearing. Moreover, such an agreement would be inconsistent with the fact the parties were in the midst of a lengthy arbitration proceeding when they made the agreement. It would also be inconsistent with plaintiffs' unwavering desire for a jury to decide their claims against defendant and the existence of a trial date just a few months away.

The parties' settlement agreement mirrors their remarks at the arbitration proceeding and also indicates the parties agreed to a full-day mediation, at the end of which the mediator could make a binding award between $100,000 and $5 million if the mediation was not successful. The amendment to the settlement agreement allowing the mediator to choose between plaintiffs' final demand and defendant's final offer bolsters this conclusion. The reference to binding baseball arbitration in paragraph II.3 of the agreement does not undermine this conclusion as this terminology is reasonably interpreted as a description of the type of binding mediation to which the parties agreed. (See Beck, *Is 'binding mediation' a new solution?* (Feb. 2, 2009) Virginia Lawyers Weekly <http://valawyersweekly.com/2009/02/02/is-'binding-mediation'-a-new-solution/> [as of May 30, 2012] [Binding mediation or mediated arbitration is a hybrid of mediation and arbitration. Essentially, the parties attempt to resolve their dispute with the assistance of a mediator as they would in a standard mediation. If they are unable to resolve their dispute, the mediator issues a final, binding decision at the end, just as an

arbitrator would. Baseball-style arbitration, in which an arbitrator decides a monetary dispute by selecting from the parties' final proposals, is an example of binding mediation]; see also Calkins, *Mediation: The Radical Change from Courtroom to Conference Table* (2010) 58 Drake L.Rev. 357, 380, 390 (*Calkins* article) [In baseball arbitration, the plaintiff makes a demand, the defendant makes an offer, and after a full hearing, the arbitrator selects one of the figures as the award. In binding mediation, the mediator conducts a mediation and, if a settlement is not reached, the mediator decides the matter by reaching a fair settlement figure.].)

■ Perhaps most supportive of the trial court's finding is the absence of any indication defendant or its counsel ever requested an arbitration hearing after the full-day mediation ended or objected because the mediator failed to commence an arbitration hearing after the mediation ended. (*Okun v. Morton* (1988) 203 Cal.App.3d 805, 819 [250 Cal.Rptr. 220] [parties' postagreement conduct is persuasive evidence of their intent].) If the parties had agreed to conduct a postmediation arbitration hearing, or if defendant thought they had such an agreement, we cannot fathom any reason why defendant would not have raised the issue at the time or in any of its postmediation correspondence with the mediator. ■ Accordingly, we conclude substantial evidence supports the trial court's finding the parties mutually agreed to allow the mediator to select between plaintiffs' final demand and defendant's final offer after the end of their unsuccessful mediation without first conducting a separate arbitration proceeding that included an evidentiary hearing.

### III

### *Uncertainty*

■ Defendant next contends the settlement agreement is unenforceable because "binding mediation" is an inherently uncertain term. "In order for acceptance of a proposal to result in the formation of a contract, the proposal 'must be sufficiently definite, or must call for such definite terms in the acceptance, that the performance promised is reasonably certain.' [Citation.] A proposal ' "cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain. [¶] . . . The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy." ' [Citation.] If, by contrast, a supposed 'contract' does not provide a basis for determining what obligations the parties have agreed to, and hence does not make possible a determination of whether those agreed obligations have been breached, there is no contract." (*Weddington, supra*, 60 Cal.App.4th at p. 811.) "Whether a contract is certain enough to be enforced is a question of law for the court." (*Patel v. Liebermensch* (2008) 45 Cal.4th 344, 348, fn. 1 [86 Cal.Rptr.3d 366, 197 P.3d 177].)

Defendant relies on *Lindsay v. Lewandowski* (2006) 139 Cal.App.4th 1618 [43 Cal.Rptr.3d 846] (*Lindsay*) to support its contention. In *Lindsay*, the parties signed a stipulated settlement agreement following private mediation. (*Lindsay, supra*, 139 Cal.App.4th at p. 1620.) Most of the parties signed a version stating they agreed to resolve any disputes regarding the terms of the agreement by binding arbitration. (*Ibid.*) However, some of the parties signed a version requiring a return to the mediator to resolve such disputes. (*Id.* at pp. 1620, 1623.)

To further complicate matters, one of the provisions of the agreement initially provided for some of the parties to resolve their dispute by binding mediation, but the word "mediation" had a line drawn through it and the word "arbitration" was typed directly above it. (*Lindsay, supra*, 139 Cal.App.4th at p. 1620.) Yet another provision required the appellants to pay the respondents a specific amount of money, subject to terms to be mutually agreed upon, or determined by binding mediation if they could not be mutually agreed upon. (*Ibid.*)

Over their objection, the appellants participated in a binding mediation proceeding to determine the terms of their payment to the respondents. The mediator issued an award in favor of the respondents, which the trial court subsequently confirmed. (*Lindsay, supra*, 139 Cal.App.4th at p. 1622.)

On appeal, the appellants argued the stipulated settlement agreement was unenforceable because, among other reasons, the parties never agreed on a specific procedure to resolve their payment terms dispute. The appellate court concurred. (*Lindsay, supra*, 139 Cal.App.4th at p. 1622.)

The appellate court concluded from the provision in the contract striking out "mediation" and replacing it with "arbitration" that the parties regarded binding mediation as something different from arbitration. (*Lindsay, supra*, 139 Cal.App.4th at p. 1623.) The appellate court also concluded the provision requiring binding mediation of payment terms conflicted with the provision in the version of the agreement some of the parties signed requiring binding arbitration of any disputes over settlement terms. (*Ibid.*) Because the various discrepancies prevented the appellate court from ascertaining what the parties actually meant when they used the term "binding mediation," the appellate court concluded the parties' agreement was too uncertain to be enforceable.[4] (139 Cal.App.4th at p. 1623.)

---

[4] The appellate court went on to criticize the concept of binding mediation. It did not, however, as defendant suggests, conclude an agreement for binding mediation is categorically unenforceable. (*Lindsay, supra*, 139 Cal.App.4th at p. 1624.) While we agree with our colleagues that the concept of binding mediation seems paradoxical, we also note it is a recognized dispute resolution method, at least in certain contexts. (See, e.g., Lab. Code, § 1164 [collective bargaining]; *Frain v. Frain* (1995) 213 Mich.App. 509, 510 [540 N.W.2d 741, 742]

■ The *Lindsay* case is distinguishable from the instant case in two key respects. First, unlike the appellants in *Lindsay*, who demonstrated the absence of a meeting of the minds by objecting to binding mediation at the outset, defendant in this case never objected to binding mediation or insisted it was entitled to a postmediation arbitration hearing until after the mediator made an award in plaintiffs' favor. Second, unlike the parties in *Lindsay*, the parties in this case elaborated on what they meant by the alternative dispute resolution method they chose. As discussed in part II, *ante*, they agreed to a full day of mediation at the end of which, if the mediation was unsuccessful, the mediator would award plaintiffs an amount equal to either their last demand or defendant's last offer. Thus, unlike the agreement in *Lindsay*, the agreement in this case is sufficiently certain to be specifically enforceable. (Civ. Code, § 3390, subd. 5; *Blackburn v. Charnley* (2004) 117 Cal.App.4th 758, 766 [11 Cal.Rptr.3d 885] [modern trend disfavors holding contracts unenforceable because of uncertainty and defense of uncertainty applies only when the uncertainty prevents the court from knowing what to enforce]; accord, *Patel v. Liebermensch, supra*, 45 Cal.4th at p. 349.)

IV

*Constitutionality*

Lastly, defendant contends the settlement agreement is unenforceable because binding mediation is not among the constitutionally and statutorily permissible means of waiving jury trial rights. We review claims concerning the construction and application of statutes de novo. (*Critzer v. Enos* (2010) 187 Cal.App.4th 1242, 1253 [115 Cal.Rptr.3d 203].)

■ Under the California Constitution, trial by jury is an inviolate right secured to all. Nonetheless, the parties to a civil case may consent to waive a jury trial as prescribed by statute. (Cal. Const., art. I, § 16.) ■ The statutory means of waiving the right to a jury trial in a civil case are by (1) failing to appear at the trial; (2) written consent filed with the clerk or judge; (3) oral consent, in open court, entered in the minutes; (4) failing to announce, at the appropriate time, that a jury trial is required; or (5) failing to deposit jury fees. (§ 631, subds. (a) & (d).)

---

[marital dissolution].) In addition, one commentator has described binding mediation as more flexible than arbitration because the mediator can request more information, documentation, or discussion and the parties and their counsel can more actively participate in the process. (*Calkins* article, *supra*, 58 Drake L.Rev. at p. 390.)

■ Although binding mediation such as provided in the parties' settlement agreement is not among the methods listed in section 631 for waiving a jury trial, this does not preclude enforcement of the settlement agreement. As the Supreme Court explained, "Section 631 . . . relates only to the manner in which a party to [a pending court] action can waive his right to demand a jury trial instead of a court trial. It does not purport to prevent parties from avoiding jury trial by not submitting their controversy to a court of law in the first instance. *Indeed it has always been understood without question that parties could eschew jury trial either by settling the underlying controversy, or by agreeing to a method of resolving that controversy, such as arbitration, which does not invoke a judicial forum.*" (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 713 [131 Cal.Rptr. 882, 552 P.2d 1178], italics added (*Madden*).)

In this case, the parties agreed to settle their dispute through binding mediation in a nonjudicial forum. Thus, section 631 does not apply and any failure to comply with it does not render their agreement unconstitutional and unenforceable.

■ *Grafton Partners v. Superior Court* (2005) 36 Cal.4th 944 [32 Cal.Rptr.3d 5, 116 P.3d 479] (*Grafton*), upon which defendant relies, does not alter our conclusion. *Grafton* is readily distinguishable as it involved the validity of a predispute jury trial waiver in a judicial forum, to which section 631 indisputably applies. (*Grafton, supra*, at pp. 950–951.) It did not involve, as here, the validity of a postdispute jury trial waiver arising from a settlement and agreement to resolve the plaintiffs' claims against the defendant in a nonjudicial forum, to which section 631 does not apply. (*Madden, supra*, 17 Cal.3d at p. 713.) As *Grafton* specifically recognized this distinction (*Grafton*, at p. 955), *Grafton* undermines rather than supports defendant's position.

The absence of a statute expressly authorizing the type of dispute resolution process to which the parties agreed also does not alter our conclusion. Nothing in *Madden* or *Grafton* requires the existence of such a statute to avoid the application of section 631. Instead, whether a jury trial waiver must comport with section 631 depends on whether the parties have selected a judicial or a nonjudicial forum. (*Grafton, supra*, 36 Cal.4th at p. 955; *Madden, supra*, 17 Cal.3d at p. 713.) As the parties in this case selected a nonjudicial forum, section 631 has no bearing on the enforceability of their agreement.

## DISPOSITION

The stay issued May 5, 2011, is vacated. The judgment is affirmed. Respondents are awarded their costs on appeal.

Benke, J., and Huffman, J., concurred.

A petition for a rehearing was denied June 20, 2012, and appellant's petition for review by the Supreme Court was denied August 29, 2012, S203897. Werdegar, J., did not participate therein.