Filed 9/18/13  Stones v. Hope Ranch Park Homes Assn. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| CHARLES STONES,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>HOPE RANCH PARK HOMES ASSOCIATION,<br><br>    Defendant and Respondent. | 2d Civil No. B243427<br>(Super. Ct. No. 1341215)<br>(Santa Barbara County) |

Plaintiff appeals an order denying his motion to enforce a judgment based on a settlement agreement.  (Code Civ. Proc., § 664.6.)  We reverse.

### FACTS

Charles Stones has owned a home in Hope Ranch for over 30 years.  The home has ocean views.  Hope Ranch is governed by the Hope Ranch Park Homes Association (Association).  The parcels in Hope Ranch are subject to covenants, conditions and restrictions (CC&Rs).

The CC&Rs contain provisions giving the Association the power to regulate the height of trees and other plants to protect views from adjacent lots and to protect the privacy of the owner of the lots containing the trees or plants.

William and Carol Foley were Stones's neighbors.  They planted vegetation that Stones believed obstructed his ocean view.  In a preemptive strike, the Foleys

brought an action against Stones to bar him from enforcing the view rights granted to him by the CC&Rs. The action resulted in a judgment in favor of Stones, holding that he had enforceable view corridors over the Foleys' parcel. (*Foley v. Stones* (March 13, 2000) 2d Civil No. B128600 [nonpub. opn.].)

In 2002, the Association met with the parties to develop a plan to preserve Stones' views. The plan is designated by the parties as the "2002 Decision." It prohibits the Foleys from planting any new vegetation that would interfere with Stones's views and requires the Foleys to remove offending volunteer vegetation on an ongoing basis. Photographs taken in 2002 established a baseline for trimming.

In 2009, Stones again became dissatisfied with the Foleys' vegetation. Stones filed the instant complaint for declaratory relief, enforcement of equitable servitude, breach of fiduciary duties and negligence. He named the Association and its general manager as defendants. The Foleys were not made parties.

While the action was pending, the Foleys conveyed their property to Mark and Carol Brown.

In November 2010, the Association and Stones entered into a settlement agreement. The agreement was stated orally on the court record. The parties, however, could not agree on the wording of a written formal order. Eventually, the trial court ruled that the judgment will be in the language as stated orally on the court record.

The agreement provides in part: "The [Association] will send a letter to the Browns, the new owners of the Neighboring Property (hereinafter, 'New Owners'), advising them of the violations of the original 2002 Decision of the [Association] and advising them of the trimming that must be done. The deadline for the completion of the trimming by the New Owners will be February 2011. After the New Owners remediate the issues with the two Protected Views and the Parties agree that the work has been completed, new photographs will be taken of the Protected Views from the same vantage point and location as the 2002 Photographs ('2011 Photographs[']), and the 2011 Photographs will form the new baselines. The parties must agree that the 2011 Photographs are representative photographs. [¶] . . . [¶] Once the trimming is completed

2

and the 2011 Photographs establishing the protected views are taken, any foliage, plants, trees growing into those views, whether specifically identified by name or type in the Mediated Settlement Agreement or this Judgment, must be trimmed to maintain the 2011 views. [¶] The New Owners will be advised that trimming . . . shall be completed by the end of May and November of each calendar year."

The agreement does not expressly require the Association to take any specific action should the Browns fail to comply. The trial court retained jurisdiction to enforce the agreement.

The Association notified the Browns of the trimming required by the 2002 Decision. Eventually, the Association determined that the Browns had complied with the 2002 Decision except for the failure to remove two Cypress trees and trim one bush. The Association imposed a penalty of $10 per day for every day the Browns failed to comply. The Association imposed a modest penalty because the Browns had substantially complied and the violation had a "minimal impact on the Ranch."

Stones did not agree that the Browns had substantially complied with the 2002 Decision. Stones claimed the Browns' failure to comply went beyond the refusal to remove two Cypress trees and trim a bush. Stones also believed that a $10 per day penalty would not be sufficient to force the Browns to comply.

Stones brought the instant motion to enforce the settlement agreement. Stones asked the court to order the Association to bring legal action against the Browns or use self-help by cutting the trees at the Browns' expense; in the alternative, to appoint a referee to determine the extent of the Browns' failure to comply.

The trial court denied the motion on the ground that the settlement agreement does not require the Association to take the actions demanded by the Stones. The court found the Association has complied with the judgment.

DISCUSSION

I.

Code of Civil Procedure section 664.6 authorizes the trial court to enter judgment based on a settlement agreement. It further authorizes the court, on request of the parties, to retain jurisdiction to enforce the settlement.

A settlement agreement is a contract to which the legal principals generally applicable to contracts apply. (*Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 732.) The goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. (*Founding Members of the Newport Beach Country Club v. Newport Beach County Club, Inc.* (2003) 109 Cal.App.4th 944, 955.) When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible. (*Ibid.*) In construing a contract, a party's subjective intent is immaterial. (*Brant v. California Dairies, Inc.* (1935) 4 Cal.2d 128, 133.) Instead, the objective meaning of the words is controlling. (*Ibid.*)

II.

Stones contends the settlement agreement impliedly decreed that the Association is the party responsible to gain full compliance from the Browns.

The Association agrees that it has an obligation to enforce the settlement against the Browns. But Stones's motion goes beyond requesting a declaration the Association must enforce the agreement. The motion requests that the trial court order the Association to take specific actions: either to use self-help or bring a lawsuit against the Browns. Nothing in the agreement requires the Association to take any specific enforcement action. The trial court has no power to add terms to the agreement. (See *Weddington Productions, Inc. v. Flick* (1998) 60 Cal.App.4th 793, 797.)

Stones's reliance on *Ekstrom v. Marquesa at Monarch Beach Homeowners Association* (2008) 168 Cal.App.4th 1111, 1121, is misplaced. There, the judgment required the homeowners association to enforce the view provisions of the CC&Rs "'. . . and to utilize every enforcement mechanism available to it under the CC&Rs and the law in order to do so.'" (*Ibid.*) The settlement agreement Stones requested the court

to enforce contains no similar language requiring the Association to use every enforcement mechanism available. The trial court recognized that Stones might have obtained a judgment similar to the judgment in *Ekstrom* had the case gone to trial. But it is not the judgment the parties agreed upon here.

The settlement agreement does not deprive the Association of the powers given to it by the CC&Rs. Paragraph 9.10 of the CC&Rs provides that the Association "may" utilize one or more of the listed remedies including judicial remedies, self-help and monetary penalties. But the CC&Rs do not require the Association to use any particular remedy or remedies. Instead, paragraph 9.08 of the CC&Rs gives the Association "broad discretion in resolving disputes between Owners concerning views."

The Association chose to impose a monetary penalty of $10 per day. Stones complains the penalty is insufficient to compel the Browns to comply. But Stones did not ask the trial court to find the Association acted in bad faith. Nor does he request that the Association increase the amount of the daily penalty. Instead, he demands self-help or litigation. Nothing in the settlement agreement requires the Association to undertake either remedy.

That is not to say that the Association can impose a fine that proves to be ineffective, and consider the matter resolved. The Association is bound by the covenant of good faith and fair dealing that is implied in every contract. (*Universal Sales Corp. v. Cal. Press Mfg., Co.* (1942) 20 Cal.2d 751, 771.) Thus, the Association must make a good faith effort to compel the Browns to comply. The settlement agreement, however, leaves the Association with broad discretion to choose the appropriate enforcement mechanism. It may be as simple as increasing the monetary penalty.

Stones argues the Association breached the settlement agreement by unilaterally determining that the Browns are in substantial compliance with the 2002 Decision. Stones points out that the settlement agreement requires the parties to "agree that the work has been completed." But Stones is one of the parties who must agree. He has unilaterally determined that the Browns are not in substantial compliance. The trial court cannot enforce the settlement agreement by ordering the parties to agree.

5

The problem is that the settlement agreement is silent about resolving the dispute when the parties cannot agree on the amount of trimming required to comply with the settlement. Necessarily implied within the agreement are tools the court in its discretion may use to resolve the impasse. (Civ. Code, § 1656.) Stones suggests that the court appoint a referee. This is a reasonable solution, but there may be others the court prefers. We remand so that the court may have that opportunity.

Implied within the trial court's decision is the finding that the fine leveled by the Association is an effective remedy. But Stones argues that it is not an effective remedy because the problem still exists. If the Browns are content to pay a $10 a day fine, and not trim the trees, the remedy is not reasonable. Indeed the very purpose of the fine is to compel the Browns to trim the trees.

How much easier a resolution of this case would have been had the Browns been a party. But we decide cases as we find them.

The matter is reversed and remanded for the trial court to consider the appropriate method to resolve the impasse over the level to trimming and the effectiveness of the fine. We leave the award of attorney fees, if any, to the discretion of the trial court. Costs on appeal are awarded to Stones.

NOT TO BE PUBLISHED.


GILBERT, P.J.


We concur:



YEGAN, J.



PERREN, J.


6

Thomas P. Anderle, Judge

Superior Court County of Santa Barbara

_____

Ogden & Fricks LLP, Roy E. Ogden, Sue N. Carrasco for Plaintiff and Appellant.

Horvitz & Levy, Curt Cutting, Emily V. Cuatto, Bragg & Kuluva, Christina Y. Morovati for Defendant and Respondent.