Filed 5/25/16  Bagwell v. JP Morgan Chase Bank CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ESPERANZA D. BAGWELL, | B259805 |
| Plaintiff and Respondent, | |
| v. | (Los Angeles County Super. Ct. No. GC044928) |
| JP MORGAN CHASE BANK, N.A., | |
| Defendant and Appellant. | |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Jan A. Pluim, Judge.  Reversed.

        Bryan Cave, Glenn J. Plattner and Richard P. Steelman, Jr., for Defendant and Appellant.

        Dan Hogue for Plaintiff and Respondent.

In the purchase of her home, plaintiff Esperanza D. Bagwell obtained a mortgage loan from Washington Mutual Bank (WaMu), secured by a first trust deed on the property. After the demise of WaMu, defendant JP Morgan Bank, N.A. (Chase) assumed the beneficial interest in the loan. Plaintiff defaulted, and Chase initiated a nonjudicial foreclosure, which resulted in a trustee's sale in which Deutsche Bank National Trust Company (Deutsche) purchased the property for $1,023,625.18 (the amount of the unpaid debt and other charges) and received a trustee's deed.

Plaintiff sued Chase and Deutsche for wrongful foreclosure, among other claims. The parties reached a written settlement agreement, enforceable under Code of Civil Procedure section 664.6 (section 664.6), under which plaintiff dismissed her claims and Chase agreed to consider plaintiff for a loan modification. If Chase offered a loan modification, and plaintiff accepted, then Chase would rescind the trustee's deed issued to Deutsche (which would restore plaintiff's ownership of the property). However, if plaintiff did not accept the modification offer, or if Chase sent plaintiff a written notice denying a loan modification, Chase would pay plaintiff $50,000.

Despite the term of the settlement providing for rescission of the trustee's deed only after plaintiff was offered and accepted a loan modification, Chase recorded a notice of rescission of the trustee's deed without such an offer or acceptance. Plaintiff then brought a motion to enforce the settlement agreement under section 664.6. She contended that Chase's recording the notice of rescission under circumstances not contemplated by the settlement agreement constituted an acceptance of a prior offer she had made to purchase the property for $899,900, the price at which Chase had listed the property at the time the settlement agreement was reached.

The trial court (adopting the recommendation of the referee who heard the matter) agreed, and ruled that Chase had implicitly agreed to transfer title to plaintiff subject to an equitable lien of $899,900, unless Plaintiff "waive[d]" ownership and chose to receive "the alternate payment of $50,000 provided for in the" settlement agreement. Chase now appeals from the trial court's order enforcing the settlement agreement, contending that the trial court improperly rewrote the agreement.[1] We conclude that by creating a new, unwritten material term, the trial court exceeded its authority to enforce the settlement agreement under section 664.6. Therefore, we reverse the order.

# BACKGROUND

*Loan and Default*

In November 2004, to finance the purchase of her home in Monrovia, California, plaintiff made a $300,000 down payment and obtained a mortgage loan of $900,000 from WaMu secured by a first trust deed on the property. In

---

[1] Ideally, the order should have been incorporated in a final judgment. However, it was not. Nonetheless, as suggested by plaintiff, we deem the order appealable under Code of Civil Procedure section 904.1, subdivision (a)(8), as an appeal "[f]rom an interlocutory . . . order . . . made or entered in an action to redeem real . . . property from a mortgage thereof, or a lien thereon, determining the right to redeem and directing an accounting." The court's ruling had the effect of redeeming the property from a mortgage, and the order directed an accounting, insofar as it provided that the rental income received on the property after the recording of the notice of rescission (which restored plaintiff's ownership of the property) be offset by interest on Chase's equitable lien and any related property expenses.

In the alternative, we exercise our discretion to treat the appeal as a petition for writ of mandate, and consider it on the merits. (*Olson v. Cory* (1983) 35 Cal.3d 390, 401.) The order purports to finally resolve all issues between the parties, the case has been thoroughly briefed, and plaintiff (as respondent) has expressly asked that we not dismiss the case but rather decide it on the merits, as the case is more than six years old, the complaint having been filed in March 2010.

December 2005, she obtained a home equity loan of $96,600 from WaMu secured by a second trust deed. Following WaMu's insolvency, Chase acquired certain of WaMu's assets and liabilities from the Federal Deposit Insurance Corporation (acting as WaMu's receiver) in September 2008. Among the assets acquired was the beneficial interest in plaintiff's mortgage loan.

In March 2009, plaintiff defaulted on her mortgage loan. In June 2009, the California Reconveyance Company (CRC), trustee under the first deed of trust, recorded a notice of default against the property, followed in September 2009 by a notice of trustee's sale, which estimated the amount of the unpaid balance and other charges at $1,009,897.80. Plaintiff sought a loan modification from Chase, but Chase concluded she did not have sufficient income to qualify, and denied a modification in October 2009. The trustee's sale occurred in November 2009, and a Trustee's Deed Upon Sale was recorded conveying all interest in the property to Deutsche as Trustee, which paid the amount of the unpaid debt and other charges, calculated at $1,023,625.18.

*Lawsuit and Settlement Agreement*

In March 2010, plaintiff sued Chase and Deutsche for wrongful foreclosure (among other causes of action). That litigation ended in a written settlement agreement, executed by plaintiff in December 2012 and Chase in February 2013.

Under the agreement, which specified that it was enforceable under section 664.6, Chase "agree[d] to review a request for loan modification and all related application and requested documents submitted by Plaintiff pursuant to its regular practices and procedures." Plaintiff was required to "submit all documents within ten (10) days from JPMC's [Chase's] request." If plaintiff failed to do so, Chase had "no obligation to process the loan modification request." Plaintiff agreed to

4

"timely execute all documents which JPMC [Chase] customarily requires, and otherwise cooperate in taking such additional action as is required to implement the terms and conditions of this Agreement, and to process any request of Plaintiff for a modification of the loan." The agreement cautioned: "JPMC [Chase] does not guarantee any specific loan terms, or otherwise promise that a loan modification of any kind will be offered, as it is possible that based on the information provided, and other considerations, Bagwell [plaintiff] may not meet the criteria for loan modification."

However, if Chase offered a loan modification, and plaintiff accepted, then Chase would rescind the trustee's deed; upon receipt of the first modified loan payment, the modified loan would thereafter be in full force and effect. On the other hand, if within 15 days of the offer plaintiff failed to accept, or if Chase sent plaintiff a written notice denying a loan modification, Chase would pay plaintiff $50,000.[2]

---

[2]     The relevant terms of the agreement are as follows:
"3.2    Obligations of JPMC
      "3.2.1   JPMC agrees to review a request for loan modification and all related application and requested documents submitted by Plaintiff pursuant to its regular practices and procedures. If JPMC thereafter makes an offer to Plaintiff to modify the loan on the Subject Property, and Plaintiff accepts said offer and executes all necessary loan modification documents, JPMC will rescind the trustee's deed upon sale recorded in Los Angeles County Recorder's office on November 10, 2009 as document 20091689765, and the loan, as modified, following receipt of the first payment due from Bagwell, will be thereafter in full force and effect as modified. However, JPMC does not guarantee any specific loan terms, or otherwise promise that a loan modification of any kind will be offered, as it is possible that based on the information provided, and other considerations, Bagwell may not meet the criteria for loan modification. Bagwell will submit all documents within ten (10) days from JPMC's request. If Bagwell fails to timely submit documents, JPMC will have no obligation to process the loan modification request.

5

As part of the agreement, plaintiff dismissed her claims against Chase and Deutsche and gave them a release of liability. The agreement was fully integrated, and additionally provided: "No supplementation, modification, waiver or termination of this Agreement shall be binding unless executed in writing by the Party to be bound thereby. [¶] . . . No waiver of any provisions of this Agreement shall be deemed or shall constitute a waiver of any of the other provisions hereof whether or not similar, nor shall such waiver constitute a continuing waiver. The Parties hereto may amend or modify this Agreement in such manner that may be agreed upon by written instruments executed by such Parties."

*Motion to Enforce the Settlement Agreement*

In February 2014, plaintiff brought a motion to enforce the settlement agreement under section 664.6. In support of the motion, plaintiff and her counsel filed a declaration (supported by exhibits) showing that at the time of the

---

"3.2.2   In the event JPMC offers to modify Plaintiff's loan and within fifteen (15) days from the date JPMC offers Plaintiff a loan modification, Plaintiff fails to accept the loan modification, or in the event after review of the loan modification application, JPMC sends written notice to Plaintiff denying Plaintiff a loan modification, JPMC shall pay Plaintiff the sum of Fifty Thousand Dollars ($50,000), herein, 'the Payment.' The Payment shall be made only in the event a loan modification offer is not timely accepted and or a loan modification is denied, as provided herein, and in either of those events, said Payment will be made within twenty (20) business days from Plaintiff's delivery to JPMC's counsel of an IRS form W-9 for all payees.
    "3.3   Obligations of Bagwell
    "3.3.1   Upon execution of this Agreement, Bagwell shall permanently dismiss with prejudice the Lawsuit and waive all known and unknown claims arising therein, and all other claims regarding the origination and/or servicing of the loan.
    "3.3.2   As provided in this Agreement, Bagwell shall timely execute all documents with JPMC customarily requires, and otherwise cooperate in taking such additional action as is required to implement the terms and conditions of this Agreement, and to process any request of Plaintiff for a modification of the loan as provided in paragraph 3.2.1."

6

settlement, Chase had listed the property for sale at $899,000.  On November 2, 2012, as requested by Chase during settlement discussions, plaintiff (via email through her counsel) sent Chase's attorney her completed package for a loan modification along with supporting documentation.  Plaintiff's counsel also informed Chase's attorney that plaintiff was willing to accept a modified mortgage of $849,000, based on the $899,000 list price and a $50,000 down payment.

As we have noted, plaintiff signed the settlement agreement in December 2012, and Chase signed in February 2013.  According to plaintiff's counsel, in April 2013 he wrote to Chase's attorney "reconfirming" plaintiff's offer, and demanding that Chase pay $50,000 to plaintiff under the settlement agreement unless Chase intended to give plaintiff a loan modification.

The settlement agreement contemplated that Chase would rescind the trustee's deed issued to Deutsche in the event it offered, and plaintiff accepted, a loan modification.  Nonetheless, in July 2013, without offering a loan modification, Chase (through CRC) recorded a Notice of Rescission of Trustee's Deed Upon Sale, rescinding the trustee's deed issued to Deutsche.  The stated purpose of the rescission was to "return the priority and existence of all lien holders to the status quo ante that existed prior to the Trustee's sale."  The effect of the rescission was to restore the prior deed of trust, under which plaintiff was named as trustor and owner of the property.

After the rescission, in August 2013, plaintiff's counsel wrote to Chase's attorney, informing Chase that the rescission violated the settlement agreement, and that plaintiff viewed the rescission "as a tacit acceptance of her proposal" to purchase the property.  Counsel stated that plaintiff was awaiting details concerning the interest rate for her loan and payment instructions.  Also, until plaintiff's purchase was final, counsel stated that plaintiff expected Chase to retain

rent payments from the tenants at the property as payment in full of interest on any unpaid loan obligation.

In response, Chase's attorney emailed that he would try to get some answers. In the following weeks, he told plaintiff's attorney that Chase needed an entirely new application.

In her motion to enforce the settlement agreement, plaintiff asked for an evidentiary hearing. She argued that the rescission of the trustee's deed was partial performance by Chase of the loan modification option of the settlement agreement. According to plaintiff, the last listing price of $899,000 established the property value, and the interest rate for the proposed $849,000 loan could be established by the market rate for similar loans issued by Chase.

*Chase's Opposition*

In Chase's opposition to the motion to enforce the settlement agreement, supported by a declaration by Chase's attorney, Chase argued that plaintiff was not seeking to enforce the settlement agreement, but rather to rewrite it. According to Chase, in order to be considered for a loan modification, plaintiff had to be the owner of the property. Therefore, the trustee's deed was rescinded. The rescission was not a partial performance of the loan modification option of the settlement agreement.

The rescission took longer than expected, and thus some of plaintiff's financial documents became stale. Chase's attorney asked plaintiff's counsel to have plaintiff re-submit certain documents, including those required by the IRS. However, plaintiff refused. Thus, on February 5, 2014, Chase's attorney informed plaintiff's counsel that plaintiff was denied a modification because of her failure to provide updated financial documents. According to Chase, under these

8

circumstances, Chase was prepared to pay plaintiff $50,000 under the settlement agreement.

*Plaintiff's Reply*

In reply, plaintiff filed evidentiary objections to two statements in the declaration of Chase's attorney: (1) the statement that to consider plaintiff's loan modification, it was necessary to rescind the trustee's deed, and (2) the statement that the rescission took longer than expected and some of plaintiff's financial documents became stale. Also, according to plaintiff's counsel, Chase did not specifically inform him that it had denied a loan modification. Rather, the relevant email from Chase's attorney stated that a motion to enforce the settlement was unnecessary, because he would "get the check for $50K cut."

*Judicial Reference*

In April 2014, the parties stipulated to submit the motion to enforce the settlement to a referee. Therefore, the superior court referred the matter to a referee, who was authorized to "issue such orders as he deems necessary for the orderly presentation of evidence and argument," and to make advisory findings of fact and conclusions of law.

In July 2014, the referee held a hearing which resulted in a written recommendation of findings of fact and conclusions of law. Although the recommendation states that it was issued after "ruling on the evidentiary objections and reviewing all admissible evidence submitted and hearing arguments of counsel," no transcript or other record of the proceeding before the referee, including which objections, if any, were sustained, is contained in the record on appeal.

9

As here relevant, in the recommendation, the referee reasoned that under the settlement agreement, Chase had two options: "a. Reach an agreement with Plaintiff for modified loan terms (after which title would be transferred back to Plaintiff); or b. Pay Plaintiff $50,000." However, "[w]ithout revising the Agreement, JPMC [Chase] executed and recorded a Notice of Rescission before a loan modification agreement was secured. . . . [A]s contemplated by the Agreement, the recordation of the Notice of Rescission signified a meeting of the minds for the transfer of title back to Plaintiff only after a modified loan had been offered and accepted." In light of this reasoning, the referee found:

"a. The recordation of the Notice of Rescission effectively signified Defendant's agreement to return ownership to the Plaintiff at the then maximum fair market value of the property. Therefore the maximum loan amount for a modified loan (or equitable lien) is $899,000 -- being the full value of the property transferred.

"b. The legal effect of the Notice of Rescission was the transfer of legal title to the subject property to Ms. Bagwell. Because the property had been listed for sale at a list price, the effect of the transfer is a tacit recognition and establishment of an agreement that the value of the asset transferred to Plaintiff was no greater than $899,000 unless Plaintiff now rejects the tender of title transfer and instead opts for the $50,000 payment provided for in the Agreement.

"c. The Agreement did not contemplate or allow any unilateral action by Defendants to restore enforceability to the previously foreclosed senior or the foreclosed out junior loan without the express agreement of Plaintiff during the modification process. As such neither deed of trust originally encumbering the property is enforceable as originally recorded. However, the title transfer to

10

Plaintiff was not free of encumbrance but the precise terms and legal form of the encumbrance remain unresolved.

"d.     Therefore the Plaintiff holds legal title to the subject property subject to an equitable lien in the amount of $899,000 unless Plaintiff waives ownership of the subject property and instead opts for the alternate payment of $50,000 provided for in the Agreement.

"e.     Although the factual date of title transfer to Plaintiff occurred on July 11, 2013, there had been neither delivery of possession nor an accounting of income and expense during the interim period.  Any rental income received by Defendants should be offset by interest on the equitable lien and any related property expenses incurred between July 11, 2013 and the date actual possession is tendered to Plaintiff.

"9.     A full and complete loan modification application was submitted in 2013 by Plaintiff within the time allowed by the Agreement, however, the rescission took longer than expected thus some of Plaintiff's financial documents need to be updated.

"10.     The intent of the parties as set forth in the settlement agreement is best served by proceeding with the loan modification process.  The Referee therefore recommends as follows:

"a.     Within 30 days of the date the Court enters its Order on this recommendation, Plaintiff shall provide the following documents to counsel for Defendants:

"i.     Completed loan modification application, with documents requested.

"ii.     Form 4506T-EZ for 2012, 2013, 2014.

"iii.     Profit and Loss Statement for the most current quarter.

11

"b.     Within 45 days of receipt of all documents requested in item 1, JP Morgan Chase Bank, N.A. shall advise Plaintiff's counsel, in writing, if Plaintiff qualified for a loan modification and if so, shall advise of the terms of said loan modification.

"c.     Within 20 days of the date of service of the decision on the loan modification, Plaintiff shall advise, in writing, that she accepts the loan modification, or, that she rejects the loan modification.

"d.     If plaintiff accepts the loan modification, she shall execute the loan modification documentation and JPMC shall proceed with processing and boarding the new loan terms.  If Plaintiff has rejected the loan modification, JPMC shall tender to Plaintiff's counsel the sum of $50,000 within 20 days of receipt of a W-9 from Plaintiff."

*Chase's Objection and Court's Adoption of the Recommendation*

In the superior court, Chase filed an objection to the referee's recommendation.  Chase argued that "the issue before the Referee was solely the enforcement of the Settlement Agreement, and did not include any authority to set the terms of a modified loan, or the value of the property."  After an unreported hearing, the court adopted the recommendation without modification.

## DISCUSSION

I.     *Reversal of the Section 664.6 Order is Required*

Chase contends that the trial court improperly rewrote the settlement agreement, by setting the value of the property at $899,900 and modifying plaintiff's loan terms.  We agree.

12

Under section 664.6, "'[i]f parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court . . . , for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement.' [Citation.] 'Section 664.6 was enacted to provide a summary procedure for specifically enforcing a settlement contract without the need for a new lawsuit.' [Citation.] A trial court 'hearing a section 664.6 motion may receive evidence, determine disputed facts, and enter the terms of a settlement agreement as a judgment.' [Citation.] The trial court may not 'create the material terms of a settlement, as opposed to deciding what terms the parties themselves have previously agreed upon.' [Citation.] Thus, a trial court cannot enforce a settlement under section 664.6 unless the trial court finds the parties expressly consented, in this case in writing, to the material terms of the settlement. [Citation.]" (*Bowers v. Raymond J. Lucia Companies, Inc*. (2012) 206 Cal.App.4th 724, 732, and cases therein cited.)

Here, the court's ruling did not rest on a determination of what the parties expressly agreed upon in the written settlement agreement, and it did not enforce those terms. Rather, it rested on the creation of an unwritten agreement to add a new material term to the settlement agreement, under which Chase agreed to transfer title to the property to plaintiff subject to an equitable lien of $899,900, unless Plaintiff "waive[d]" ownership and chose to receive "the alternate payment of $50,000 provided for in the" settlement agreement. This new, unwritten material term was purportedly created by the occurrence of an event not covered by the settlement agreement -- Chase's recording a notice of rescission, which transferred legal title back to plaintiff, before offering plaintiff a modified loan and receiving plaintiff's acceptance.

13

Thus, in several ways the court expressed its view that the recording of the notice of rescission objectively manifested Chase's assent to the court's new material term. As the court phrased it, the recording "signified a meeting of the minds for the transfer of title back to Plaintiff only after a modified loan had been offered and accepted"; "effectively signified [Chase's] agreement to return ownership to the Plaintiff at the then maximum fair market value of the property"; was "a tacit recognition and establishment of an agreement that the value of the asset transferred to Plaintiff was no greater than $899,000 unless Plaintiff now rejects the tender of title transfer and instead opts for the $50,000 payment provided for in the Agreement"; and gave "legal title to the subject property subject to an equitable lien in the amount of $899,000 unless Plaintiff waives ownership of the subject property and instead opts for the alternate payment of $50,000 provided for in the Agreement."

Having created the new material term regarding transfer of title subject to an equitable lien of $899,900, the court then sought to implement it in a manner consistent with the intent of the settlement agreement. Thus, it ordered that the rental income on the property received by Chase "should be offset by interest on the equitable lien and any related property expenses incurred" between the date the notice of rescission was filed and the date possession of the property returned to plaintiff. Further, the court ordered the parties to comply with various conditions and time frames to implement the process called for in the settlement agreement regarding Chase considering plaintiff for a loan modification.

Thus, in the guise of enforcing the settlement agreement, the court created a new, unwritten material term, under which Chase agreed to transfer title to plaintiff subject to an equitable lien of $899,900, unless Plaintiff "waive[d]" ownership and chose to receive "the alternate payment of $50,000 provided for in the" settlement

14

agreement. The court then sought to enforce this new term in an equitable way, consistent with the court's view of the parties' intent as reflected in the settlement agreement. But by creating a new material term, and seeking to enforce it, the court exceeded its power under section 664.6.

Plaintiff makes several contentions in support of the court's order, all of which miss the mark. She contends that the evidence does not support Chase's assertion that the court's ruling reduced the balance of her loan from more than $1 million to $899,900, or that recording the rescission of the trustee's deed was required for Chase to consider plaintiff's application for a modified loan. She argues that the transfer of title to her effected by the notice of rescission, viewed under the substantial evidence standard, established Chase's acceptance of her offer to purchase the property for $899,900. She asserts that the court did not rewrite the settlement agreement, but rather "factually interpreted the conduct of the parties in a fashion consistent with" the terms of the settlement agreement, and that "[t]he court's decision to impose an equitable lien in favor of Chase is consistent with long-established principles of equity and is an entirely appropriate order that [gives plaintiff] the benefit of her bargain in the settlement agreement and post settlement agreement negotiations while still protecting Chase from the results of its own deviant actions."

However, these contentions fail to address the core problem in the trial court's ruling. This was not a bench trial on a cause of action for breach of contract based on Chase's act of recording of the notice of rescission, nor was it a trial on a claim for specific performance of an implied contract created by recording the notice of rescission. It was a proceeding under section 664.6 to enforce a settlement agreement, in which the court's authority was limited to enforcing the terms of the settlement agreement to which the parties previously

15

agreed. As such, the court had no power to materially modify the express terms of the written settlement agreement. (*Bowers, supra,* 206 Cal.App.4th at p. 732.)

At oral argument, plaintiff argued that the decision in *Malouf Bros. v. Dixon* (1991) 230 Cal.App.3d 280 suggests that the trial court did not exceed its authority under section 664.6. In *Malouf*, the appellant hired the respondents, who were contractors, to repair a road on his property, and was later sued by respondents for money due on the contract. The parties settled under terms (as here relevant) that the appellant would convey to respondents a certain parcel of land (with respondents paying a specified sum), and respondents would repair a washed out road at their own expense, with the repairs to be tested by a soil engineer. However, the appellant later refused to convey the land, contending that the road repairs were defective. (*Id.* at p. 282.)

The respondents brought a motion to enforce the settlement agreement under section 664.6. The trial court granted the motion, requiring the appellant to convey the land upon payment of the sum stated in the agreement. (*Malouf, supra*, 230 Cal.App.3d at p. 283.) On appeal, the appellant challenged the ruling, contending that the trial court was precluded from resolving the factual dispute whether the road repairs were satisfactory under the settlement agreement. The court of appeal disagreed, and held that "the trial court was authorized to determine that respondents had complied with their road repair obligations notwithstanding appellant's assertions to the contrary." (*Id.* at p. 284.)

Nothing in *Malouf* alters our analysis. Certainly the trial court in the instant case had the authority to make a factual determination whether Chase had complied with the settlement agreement. But upon making such a determination, the only remedy was to enforce the terms of the settlement agreement, and require Chase to do what it had agreed to do. The court could not create another

16

agreement (one in which Chase agreed to give plaintiff title in exchange for an equitable lien of $899,000) when no such term was in the settlement agreement.

*Remedy*

The remaining question is what to do now. Chase requests that, in addition to reversing the trial court's order, we instruct the trial court to order that the value of the property be set by a current appraisal though the loan modification process. On this record, we decline to find that such a term was encompassed by the written settlement agreement. However, we do so without prejudice to the filing of a new motion (or motions) to enforce the settlement agreement under section 664.6, seeking a determination whether such a term (or any other in dispute) was agreed to by the parties in their settlement agreement. We caution that in any future section 664.6 proceeding, the parties and the court must observe the proper scope of such a proceeding: the court is to determine what the parties previously agreed upon in the written settlement agreement, and to enforce the terms of that agreement; the court cannot create new material terms and seek to enforce them. (*Bowers, supra,* 206 Cal.App.4th at p. 732.) Of course, the parties remain free to modify the settlement agreement in writing so as to facilitate its implementation, and to make any such modification enforceable under section 664.6.

//

//

//

//

//

//

17

**DISPOSITION**

The order is reversed.  Chase shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

WILLHITE, J.

We concur:

EPSTEIN, P. J.

COLLINS, J.