Filed 4/25/16  Kern Health Systems v. Allied Management Group Investigation Unit CA2/7s

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| KERN HEALTH SYSTEMS, | B258326 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. PC052482) |
| v. | |
| ALLIED MANAGEMENT GROUP SPECIAL INVESTION UNIT, INC., et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment and postjudgment order of the Superior Court of Los Angeles County, Melvin Sandvig, Judge.  Reversed and remanded with directions.

Raines Feldman, Richard J. Decker and Robert M. Shore, for Defendant and Appellant Allied Management Group Special Investigation Unit, Inc.

Sheppard Mullin Richter & Hampton, Robert J. Stumpf, Jr.; Law Offices of Joseph K. Johnson, and Joseph K. Johnson, for Defendants and Appellants Dennis Demetre and Lori Lewis.

Dowling Aaron, Lynne Thaxter Brown; Clifford & Brown, Stephen T. Clifford and T. Mark Smith for Plaintiff and Respondent, Kern Health Systems.

————————————————

Kern Health Systems, a managed care health plan, sued Allied Management Group Special Investigation Unit, Inc. (AMG) and its former owners and principal officers, Dennis Demetre and Lori Lewis, on several related contract and tort theories based on their allegedly false promises and deficient performance during an audit engagement. Following a seven-week trial the jury returned a special verdict form finding against Kern Health on its causes of action for breach of contract, professional negligence, intentional misrepresentation and unfair business practices. As to Kern Health's remaining cause of action for negligent misrepresentation, the jury found that AMG, Demetre and Lewis honestly believed and had reasonable grounds for believing the truth of their false representations. Nonetheless, the trial court ruled there was an inconsistency in the special verdict form and the jury's intent was to find AMG, Demetre and Lewis liable and for Kern Health to recover $1.38 million on that claim.

AMG, Demetre and Lewis appeal from the judgment in favor of Kern Health based on the court's interpretation of the special verdict form and from its denial of their motion to vacate the judgment. They also appeal the denial of their motion for attorney fees pursuant to Civil Code section 1717 (section 1717) as the prevailing parties on Kern Health's breach of contract claim. We reverse the judgment and the postjudgment order denying attorney fees and remand with instructions to the trial court to enter a new judgment in favor of AMG, Demetre and Lewis and to award them reasonable attorney fees after determining the extent to which, if at all, the fees incurred may be apportioned between the contract and noncontract-based causes of action.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Retention of AMG*

Kern Health, a public agency and the largest health care plan in Kern County, receives payments from the State of California on a per member, per month basis (capitation) and compensates medical providers for their services to its members, who are typically Medi-Cal patients or participants in the Healthy Families program. Many providers in Kern Health's service area have contracts with Kern Health, which specify

2

fixed rates for various services. Providers who do not have contracts with Kern Health, however, are obligated to provide emergency care to all patients without regard to their ability to pay and are then compensated at the lower of the Medi-Cal or billed rates. Compensation under the Medi-Cal rates vary based on the provider's level of service to the patient.

In late 2007 two groups of emergency room physicians asserted Kern Health had underpaid them for their services to the plan's members for several years by "down-coding" their claims, that is, paying them at a rate utilizing a medical code lower (and thus less costly) than they had submitted and believed was warranted. Based on a review of medical records provided with the claims for payment, in contrast, Kern Health had concluded the physicians were reporting higher levels of services than warranted by the actual services provided ("up-coding"). Kern Health settled with one of the two groups; the second group filed a lawsuit against Kern Health in May 2008.

As the dispute with the emergency room physicians continued, Kern Health contacted AMG and ultimately retained it to review medical records and claims data for the two groups for the period 2004-2007 and to determine, based on its audit, whether Kern Health's position regarding up-coding was correct. The parties' Consulting Service Agreement/Emergency Claims Review, dated April 28, 2008, stated AMG would provide audit and consulting services as described in Attachment A to the contract, which contained a detailed listing of services and specified that compensation would be on a per hour basis for services provided, with hourly rates as set forth in the attachment. The contract also contained an attorney fee provision: "If a legally binding mediation does not resolve legal disputes, any action at law or in equity is necessary to enforce or interpret the terms of this Agreement, and the prevailing Party shall be entitled to reasonable attorney's fees and costs in addition to any other relief to which such Party may be legally due through adjudication."[1]

---

[1] Although AMG prepared the Consulting Service Agreement, paragraph 8.8 provided, "This Agreement shall be considered drafted by both Client [Kern Health] and

2. *Kern Health's Dissatisfaction with AMG and Its Lawsuit for Breach of Contract, Fraud and Negligent Misrepresentation*

Between its retention and its final invoice on February 24, 2009, less than one year later, AMG billed Kern Health more than $7.4 million. Kern Health instructed AMG to stop work although its audit was not yet finished. Work resumed in the fall of that year when AMG agreed to complete its analysis at its own expense. Because of staff shortages, AMG hired a separate company to undertake the project. In its report the new company concluded AMG incorrectly coded more than 80 percent of the claims it had reviewed and, rather than overpaying the emergency room physicians, Kern Health in fact owed them money. Kern Health ultimately settled the lawsuit with the second group of physicians.

In addition to the apparent errors in its work product and concern as to the large amount it had billed, a number of disputes arose between Kern Health, on the one hand, and AMG, Demetre, its chief executive officer, and Lewis, its chief operations officer, on the other hand. One issue was whether AMG stated in an initial telephone call with Kern Health that it had previously provided expert testimony and whether it had agreed to do so for Kern Health without a separate agreement addressed to expert witness services. A second issue was whether AMG had suggested conducting its audit through a random sampling procedure, rather than comprehensively testing all claims the Kern Health medical directors had down-coded. A third dispute concerned the qualifications and experience of the AMG coders who would be used in the project.

In August 2011 Kern Health filed a complaint and in August 2012 the operative first amended complaint against AMG for breach of the Consulting Service Agreement[2]

---

AMG[,] and neither Party shall be viewed unfavorably by a court of law or other entity by virtue of drafting this document."

[2] Causes of action for money had and received and quantum meruit were also pleaded against AMG; both claims were resolved in favor of AMG on its motion for summary adjudication.

4

and against AMG, Demetre and Lewis for professional negligence, intentional and negligent misrepresentation and unfair competition. As eventually presented to the jury at trial, Kern Health contended, as to both the breach of contract and professional negligence claims, that AMG, Demetre and Lewis had negligently performed the auditing and review services required under the parties' agreement and failed to perform its work in accordance with the specific procedures set forth in Attachment A to their agreement. As to the misrepresentation and unfair competition claims, Kern Health argued AMG, Demetre and Lewis had falsely stated the work would be performed in accordance with the specified procedures and protocols and had misrepresented (1) the qualifications and level of skill, education and training of the AMG staff who would be performing the audit and review; (2) the results of its initial review of the emergency room physicians' claims (falsely reporting a higher incidence of up-coding in the sample of claims evaluated); and (3) its willingness to serve as an expert witness in the litigation with the physicians.

　　　　3. *The Special Verdict Form and the Jury's Findings*

A jury trial on Kern Health's claims began on April 21, 2014 and was heard over 24 court days. After the close of evidence, instructions and argument by counsel, the jury was given a special verdict form, which had been approved by both sides and by the court.[3] The form had five sections—one for each of Kern Health's remaining causes of action—and a total of 28 questions. There was an instruction after each question directing the jury to the next question it should answer, which depended on the answer given (for example, after question 1, the jury was advised, "if your answer to Question No. 1 is YES, then answer Question No. 2. If your answer to Question No. 1 is NO, proceed to Section 2"). The court specifically told the jury to "follow my instructions and the form carefully. . . . After you answer a question, the form tells you what to do next."

---

[3] A copy of the special verdict form is attached as an appendix to this opinion, *post*, page 25 et seq.

5

In section 1, breach of contract, after finding the parties had a contract and Kern Health had performed its obligations, the jury answered no to question 3, "Did AMG fail to do something that the contract required it to do or unfairly interfere with [Kern Health's] right to receive the benefits of the contract?" As directed in the verdict form, the jury did not answer the remaining questions regarding breach of contract and proceeded to the section on professional negligence.

In section 2, professional negligence, the jury answered no as to all three defendants on question 6, the initial question, "Was AMG, [Lewis] or [Demetre] negligent?" As directed in the verdict form, the jury did not answer the remaining questions regarding professional negligence and proceeded to the section on intentional misrepresentation.

In section 3, intentional misrepresentation, the jury found that each defendant had made a false representation of important fact to Kern Health and either knew that the representation was false or made it recklessly and without regard for its truth. At Kern Health's request and over AMG, Demetre and Lewis's objection, the jury was not asked to identify which of the alleged misrepresentations was the basis for these findings. The jury also found that Kern Health had reasonably relied on the false representation, but in response to question 16 regarding causation, answered no as to all three defendants, "Was [Kern Health's] reliance on Defendant(s)' representation a substantial factor in causing harm to [Kern Health]?" As directed in the verdict form, the jury did not answer the remaining questions regarding intentional misrepresentation (damages and malice) and proceeded to the section on negligent misrepresentation.

In section 4, negligent misrepresentation, the jury again found that each of the defendants had made a false representation of an important fact to Kern Health but, in answer to question 20, found that each defendant "honestly believe[d] that the representation was true when it was made," again without identifying which alleged misrepresentation(s) was the basis for these findings, and, by answering yes to question 21, that each defendant had "reasonable grounds for believing the representation

6

was true when it was made." This affirmative response to question 21 negated an essential element of the tort of negligent misrepresentation (see, e.g., *Small v. Fritz Companies*, *Inc.* (2003) 30 Cal.4th 167, 174 [the tort of negligent misrepresentation "encompasses '[t]he assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true' [citation] and '[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true' [citations]"]). Nonetheless, the jury was directed by the special verdict form to answer the next question in this section: "If your answer to Question No. 21 is YES as to ANY Defendant, then answer Question No. 22. If your answer to Question No. 21 is NO as to ALL Defendants, proceed to Section 5." This instruction as to how to proceed inadvertently transposed the direction to continue with the remaining questions regarding negligent misrepresentation from a finding of "no" to question 21 to a finding of "yes"—an error that appeared in each side's proposed special verdict form, as well as the final version approved by both sides and the court. (Compare CACI VF-1903, Negligent Misrepresentation, in which the direction whether to proceed to the next question concerning that tort is properly stated.)

Dutifully following the typed directions following question 21, the jury responded yes as to each defendant on question 22: "Did the Defendant(s) for whom you answered "YES" to Question No. 21 intend that [Kern Health] rely on the representations?" It then answered yes to question 23, finding that Kern Health had reasonably relied on the representation, and to question 24, finding that Kern Health's reliance was a substantial factor in causing harm to Kern Health, and finally found in response to question 25 that Kern Health had paid $1,380,000 as a result of the misrepresentation.[4]

The jury returned with its verdict on June 9, 2014. The court read into the record both the question and answer for each question on the special verdict form that had been

---

[4] After completing all questions in section 4, the jury answered no to the first question in section 5, unfair business practices, "Did any of the Defendants make misrepresentations to [Kern Health] with the intention of causing [Kern Health] to make payments to AMG?"

completed. The jury was then polled. As material to this appeal, all 12 jurors had agreed the answers to questions 20 and 21 were yes: AMG, Demetre and Lewis honestly believed the representation was true when made and they had reasonable grounds for believing the representation was true.[5] After polling had been completed, the court asked if there was any reason not to discharge the jury. Both counsel agreed it was proper to do so. The court thanked the jurors and, once they left the courtroom, stated without further elaboration, "We'll prepare the judgment."

4. *The Judgment and the Motion To Vacate the Judgment*

On June 11, 2014, without further input from the parties, the court entered judgment in favor of Kern Health in the sum of $1,380,000 plus interest at the rate of 10 percent per annum from the date of the verdict. The clerk served a notice of entry of judgment the same day.

On June 25, 2014 AMG, Demetre and Lewis jointly moved pursuant to Code of Civil Procedure section 663 for an order vacating the judgment entered June 11, 2014 and entering a new judgment consistent with the special verdict returned by the jury. AMG, Demetre and Lewis argued the jury's finding they had reasonable grounds for believing the truth of the false representation attributed to them precluded a finding of liability on Kern Health's negligent misrepresentation claim. The jury's further determination that Kern Health had been damaged in the sum of $1,380,000, they insisted, was extraneous in light of the finding that one of the essential elements for the tort had not been established.

Kern Health opposed the motion and filed a protective motion for a new trial. It argued AMG, Demetre and Lewis had forfeited their right to challenge the judgment by failing to bring the defect in the special verdict form to the court's attention before the jury was discharged and also argued the jury's completion of the question regarding

---

[5] Two jurors voted no to question 24, was Kern Health's reliance a substantial factor in causing harm to Kern Health. The answers to all other questions in the section on negligent misrepresentation were unanimous.

8

damages was properly interpreted as expressing its intent to award damages against defendants for negligent misrepresentation. In the alternative, Kern Health contended the verdict was inconsistent or ambiguous—the jury found Kern had been damaged by AMG, Demetre and Lewis's innocent misrepresentation(s) but not by their intentional misrepresentation(s) even though all misrepresentations arose out of the same basic facts—and the proper remedy was a new trial. AMG, Demetre and Lewis responded to the final point by explaining the jury may have based its differing factual findings on different alleged misrepresentations.

The court denied the motion after hearing oral argument on July 24, 2014, finding there was "an inconsistency in the special verdict form in relation to Question 21" because the jury was directed to continue to answer additional questions in the same section if it answered yes to the question whether AMG, Demetre and Lewis had a reasonable basis for believing their representations were true. The court then found the jury's intent was to find AMG, Demetre and Lewis liable on the negligent misrepresentation cause of action "based on the proceedings during trial and the rendering of the verdict" and further found AMG, Demetre and Lewis had waived the issue because they failed to raise it before judgment was entered, explaining "upon the reading of the special verdict form and the polling of the jurors, the parties and their counsel were all under the impression that [AMG, Demetre and Lewis] were found to be liable on the negligent misrepresentation Cause of Action and the jury intended that [Kern Health] recover $1,380,000 in relation to that claim."

5. *The Motion for Attorney Fees*

On July 28, 2014 AMG moved pursuant to Civil Code section 1717 and Code of Civil Procedure sections 1032 and 1033.5 for an award of attorney fees in an amount not less than $2,385,463 as the prevailing party on Kern Health's cause of action for breach of a written contract—a contract that contained an attorney fee provision. In its supporting papers AMG argued apportionment of its fees between Kern Health's contract and noncontract claims was not possible because all of Kern Health's claims were based

9

on the same material facts.  The following month Demetre and Lewis also moved for an award of attorney fees in the sum of $1,245,482, arguing, although they were not signatories to the Consulting Service Agreement, they had been sued for breach of contract by Kern Health on the theory they were AMG's alter ego and were properly considered prevailing parties for purposes of section 1717.  As had AMG, Demetre and Lewis also asserted the allegations for the contract and noncontract causes of action were inextricably intertwined and apportionment of fees among the causes of action was not feasible.

Both motions were denied.  Considering AMG's motion first, the court focused on the dependent clause that introduced the attorney fee provision, "[i]f a legally binding mediation does not resolve legal disputes," and ruled this language established a condition precedent that had not been met or, if it purported to mean something else, the provision was simply too vague to be enforceable.  Although denying the motion, the court proceeded to inform the parties, if the attorney provision had not contained the vague condition precedent, it would have apportioned fees among the causes of action and would have further reduced the sums requested because the hourly rates charged by the non-lead attorneys for AMG were not reasonable.  With respect to Demetre and Lewis's motion, the court expressed doubt whether the attorney fee provision applied to them since they were neither parties to the contract nor named as defendants in the breach of contract cause of action.  It then repeated its earlier rulings that participation in binding mediation was a condition precedent to the recovery of attorney fees or the attorney fee provision, which included that language, was too vague to be enforceable and that the argument fees could not be apportioned between the contract and noncontract cause of action was unpersuasive.

Timely notices of appeal were filed by AMG, Demetre and Lewis from the final judgment entered by the trial court, denial of the motion to vacate judgment and enter new judgment and the postjudgment orders denying their motions for attorney fees.

10

## DISCUSSION

1. *The Judgment in Favor of Kern Health Is Not Supported by the Special Verdict*

Code of Civil Procedure section 663, subdivision 2, authorizes the trial court to set aside and vacate "[a] judgment or decree not consistent with or not supported by the special verdict" and to enter a different judgment that conforms to the jury's findings. A motion to vacate under section 663 is properly brought "'where a "different judgment" is compelled by the facts found. . . .'" (*Garibotti v. Hinkle* (2015) 243 Cal.App.4th 470, 477; see *Dahlberg v. Girsch* (1910) 157 Cal. 324, 326-327 [section 663 "authorizes simply the substitution of the judgment that should have been given as a matter of law upon the findings of fact in a case where the judgment already given is an incorrect conclusion from such findings"].) "In ruling on a motion to vacate the judgment the court cannot '"in any way change any finding of fact."'" (*Glen Hill Farm, LLC v. California Horse Racing Bd.* (2010) 189 Cal.App.4th 1296, 1302; accord, *Garibotti*, at p. 477.)

The judgment in favor of Kern Health, based solely on its claim for negligent misrepresentation, was patently inconsistent with the jury's findings that the three defendants honestly believed the representations at issue in that cause of action were true (question 20) and had reasonable grounds for believing the representations were true when they were made (question 21): An essential element of a claim for negligent misrepresentation is proof the misrepresentation was made by person who had no reasonable grounds for believing it to be true. (*Small v. Fritz Companies, Inc., supra,* 30 Cal.4th at p. 174; *Gagne v. Bertran* (1954) 43 Cal.2d 481, 488; *West v. JPMorgan Chase Bank, N.A.* (2013) 214 Cal.App.4th 780, 792.) Because the jury found Kern Health had failed to establish that element of its claim, the trial court erred in denying AMG, Demetre and Lewis's timely motion to vacate the judgment and to enter a new judgment in their favor. (See *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1242 (*Taylor*) ["[w]e analyze the special verdict form de novo'"]; *Saxena v. Goffney* (2008) 159 Cal.App.4th 316, 325 [same]; see also *McCoy v. Gustafson* (2009)

11

180 Cal.App.4th 56, 91 ["a special verdict's correctness is analyzed as a matter of law and therefore subject to de novo review"].)

None of the grounds proffered by the trial court or Kern Health for disregarding the jury's special verdict has merit:  AMG, Demetre and Lewis did not forfeit their right to object to the erroneous judgment by failing to bring the faulty directions in the special verdict form following question 21 to the court's attention before the jury was discharged; there was no ambiguity or inconsistency in the jury's special verdict notwithstanding the flawed directions; and the trial court's interpretation of the jury's intent impermissibly modified the jury's actual findings.

    a. *The inverted directions did not lead to a defective verdict*

An objection to a defective verdict must be made before the jury is discharged. (*Keener v. Jeld-Wen, Inc*. (2009) 46 Cal.4th 247, 265.)  "'[D]efects apparent when the verdict was read, and that could have been corrected, are waived [forfeited] by counsel's failure to timely object . . . unless the verdict itself is inconsistent.'"  (*Ibid*.)

Here, the directions following question 21 incorrectly told the jury to proceed to answer question 22 if it had answered yes as to any of the defendants, rather than if it had answered no.  Did this inadvertent mistake lead to a defective special verdict?  It surely would have if the jury had answered no to question 21 and then failed to respond to the remaining questions concerning other elements of Kern Health's negligent misrepresentation claim.  However, because the jury responded yes, negating an essential element of the cause of action, the only consequence of the improper directions was that the jury unnecessarily answered additional questions, thus making extraneous findings. Although overly complete, those findings were not defective, and no objection was required.  (See Code Civ. Proc., § 619 ["[w]hen the verdict is announced, if it is informal or insufficient, in not covering the issue submitted, it may be corrected by the jury under the advice of the court, or the jury may be again sent out"]; cf. *Zagami, Inc. v. James A. Crone, Inc*. (2008) 160 Cal.App.4th 1083, 1092 & fn. 5 [if a verdict is ambiguous or defective, a party's failure to request a correction or clarification before it is discharged

12

may amount to a waiver of the ambiguity or defect, "particularly if the party's failure to object was to reap a '"technical advantage"' or to engage in a '"litigation strategy"'"].)

Phrased somewhat differently, because the jury answered question 21 yes, rather than no, its responses to the seven questions in section 4 of the special verdict form were no different from what they would have been if the jury had been told to respond to all questions in that section regardless of its answers to any particular question—an entirely proper approach to deciding whether the plaintiff had established the discrete elements of its claim. The jury's findings regarding the presence or absence of each element of Kern Health's cause of action for negligent misrepresentation were legally sufficient for the court to fulfill its responsibility to draw from the completed findings the appropriate conclusions of law. (*McCoy v. Gustafson*, *supra*, 180 Cal.App.4th at p. 93 ["in a special verdict the jury finds the facts and leaves the legal conclusions to the trial court"]; see Code Civ. Proc., § 624 ["[t]he special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the court but to draw from them conclusions of law"].) Although there unquestionably was a mistake in the directions following question 21, there was no defect or irregularity in the findings to bring to the attention of the court before the jury was discharged.

b. *The special verdict was neither ambiguous nor internally inconsistent*

The trial court's contrary conclusion, and its corollary ruling that AMG, Demetre and Lewis had forfeited their challenge to the judgment based on the special verdict, was premised on its determination there was "an inconsistency" in the special verdict form between the answer to question 21 regarding AMG, Demetre and Lewis's reasonable basis for believing their misrepresentations were true and its finding in response to question 25 that Kern Health had been damaged in the amount of $1,385,000 by those misrepresentations: "Moving parties could have raised the issue before judgment was entered by [the] court (i.e. by indicating that the damage issue was moot based on the

13

jury's response to Question 21). Since Moving Parties failed to raise the issue, the court deems it to have been waived."

The trial court erred. The findings in questions 21 and 25 do not conflict, and there was no ambiguity in the special verdict that allowed the trial court to interpret the jury's intent. (See *Zagami, Inc. v. James A. Crone, Inc., supra*, 160 Cal.App.4th at p. 1091 ["'where no objection is made before the jury is discharged, it falls to "the trial judge to interpret the verdict from its language considered in connection with the pleadings, evidence and instructions"'"].) Kern Health presented evidence of multiple misrepresentations. The jury's answers reflect that it found at least one false statement of material fact had been made intentionally or with reckless disregard for its truth by AMG, Demetre and Lewis and at least one false statement of material fact had been made by them honestly and with reasonable grounds for believing it to be true (that is, it was false but innocent). The jury further found that Kern Health had reasonably relied on both the intentional and innocent misrepresentations. Reliance on the intentional misrepresentation did not cause Kern Health any injury, the jury found; however, Kern Health paid $1,380,000 in reliance on the innocent misrepresentation. Those factual findings are clear and consistent; the court's responsibility was to enter judgment in favor of AMG, Demetre and Lewis based on them.

We recognize the court instructed the jury that damages were recoverable only if Kern Health had proved one of its claims: "If you decide that the plaintiff KHS has proven—proved its claim against defendants AMG, Mr. Demetre, and/or Miss Lewis, you must also decide how much money will reasonably compensate the plaintiff for the harm. This compensation is called damages." However, as discussed, it was not the jury's responsibility to decide the legal effect of its answers to the questions in section 4, that is, whether Kern Health had proved all of the elements of its claim for negligent misrepresentation and was entitled to a judgment in its favor on that claim. Indeed, question 25 specifically referred to Kern Health's "damages, if any" and asked the jury only to indicate the amount Kern Health had paid as a result of its reliance on the

14

misrepresentation. Whether damages were ultimately to be awarded to Kern Health based on the answers given was a legal determination for the court alone to make. (See *McCoy v. Gustafson, supra,* 180 Cal.App.4th at p. 93 [legal conclusions based on jury's findings on special verdict are for the court].)

Nothing else in the special verdict suggests the jury had misunderstood question 21, as the court implicitly found, and really meant no, rather than yes, when it answered AMG, Demetre and Lewis had reasonable grounds for believing the truth of their false statement. The court's denial of the motion to vacate the judgment based on its independent assessment that the jury actually intended to find AMG, Demetre and Lewis liable for negligent misrepresentation was both unsupported and improper. (*Garibotti v. Hinkle, supra,* 243 Cal.App.4th at p. 477 [court cannot in any way change any finding of fact when ruling on a motion to vacate the judgment]; see *Saxena v. Goffney, supra,* 159 Cal.App.4th at pp. 325-326.)

The decision by our colleagues in Division Six of this court in *Taylor, supra,* 222 Cal.App.4th 1228, emphasized by Kern Health, does not require a different result. In *Taylor* a "typographical error" in the special verdict's directions similar to the mistake that occurred in the case at bar resulted in a damage award in favor of the plaintiff on his cause of action for hostile work environment sexual harassment without answers to questions concerning two of the elements of the claim: "The jury answered 'yes' to questions 1 through 4. By these answers, the jury found that [plaintiff] had been 'subjected to unwanted harassing conduct based on sex and/or his perceived sexual orientation,' that the harassment was 'severe or pervasive,' and that 'a reasonable person in [plaintiff's] circumstances [would] have considered the work environment to be hostile or abusive.' After question 4, the verdict form stated: 'If your answer to question 4 is *yes,* then skip ahead to question 10.' (Italics added.) The form should have stated: 'If your answer to question 4 is *no,* then skip ahead to question 10.' Because the jury's answer to question 4 was 'yes,' it followed the erroneous directions in the verdict form and skipped ahead to question 10. [¶] Thus, the jury did not answer question 5, which

15

asked: 'Did [plaintiff] consider the work environment to be hostile or abusive?' Nor did the jury answer question 6 on causation: 'Was the hostile or abusive work environment a substantial factor in causing harm to [plaintiff]?'" (*Taylor*, at pp. 1240-1241.) The jury awarded the plaintiff damages totaling $160,000 on this claim.

The *Taylor* court affirmed the trial court's conclusion the defendant employer had forfeited its claim the special verdict was fatally defective because it had failed to object before the jury was discharged even though it was clear when the jury was polled that it had not answered questions 5 and 6 on whether plaintiff considered the work environment to be hostile or abusive and whether such an environment was a substantial factor in causing him harm. (*Taylor*, *supra*, 222 Cal.App.4th at p. 1242.) The court also held, even if the issue had not been forfeited, any defect in the special verdict was harmless error (*id.* at p. 1244), explaining the facts and circumstances of the case were "aggravated, even on paper" and compelled the conclusion respondent personally considered the work environment abusive and the abusive environment injured him (*id.* at p. 1246).

The difference between the situation in *Taylor*, where the inverted directions misled the jury into skipping questions required to establish the plaintiff's hostile work environment claim, and the instant case, where the parallel mistake caused the jury to answer questions that were legally unnecessary once it had found the misrepresentations had been innocently made, is compelling. The special verdict returned in *Taylor* was, in fact, defective (although the defect was ultimately found to be harmless by the appellate court). Because that defect was apparent when the jury was polled, an objection was required to preserve the issue. Here, in contrast, although there was a mistake in the directions, there was no defect in the special verdict, as discussed, and, therefore, no need to object. Indeed, the error properly raised on appeal by AMG, Demetre and Lewis is not with the special verdict at all, but the judgment the court subsequently entered in favor of Kern Health notwithstanding the jury's finding on question 21, which defeated the claim for negligent misrepresentation.

16

2. *The Trial Court Erred in Denying the Motions for Attorney Fees*

   a. *The enforceability of the attorney fee provision in the Consulting Service Agreement*

Section 1717, subdivision (a), authorizes the trial court to award reasonable attorney fees to the prevailing party in a contract action if the contract specifically provides for an award of such fees.  To ensure mutuality of remedy, section 1717 makes an attorney fee provision reciprocal even if it would otherwise be unilateral either by its terms or in its effect.  (*Santisas v. Goodin* (1998) 17 Cal.4th 599, 610; *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 128.)[6]

Although AMG successfully defended against Kern Health's action for breach of contract and was clearly the prevailing party on that claim (see *Hsu v. Abbara* (1995) 9 Cal.4th 863, 876 ["when a defendant defeats recovery by the plaintiff on the only contract claim in the action, the defendant is the party prevailing on the contract under section 1717 as a matter of law"]), the court denied AMG's motion for attorney fees under section 1717.  Focusing on the introductory clause in the Consulting Service Agreement's attorney fee provision—"[i]f a legally binding mediation does not resolve legal disputes"—the court ruled this language either created an unfulfilled condition precedent to the award of fees or made the entire provision too vague to be enforceable. We review both aspects of that decision de novo.  (*Patel v. Liebermensch* (2008) 45 Cal.4th 344, 348, fn. 1 ["[w]hether a contract is certain enough to be enforced is a question of law for the court"]; *Gil v. Mansano* (2004) 121 Cal.App.4th 739, 743 ["[i]f the parties do not present extrinsic evidence to interpret the attorney fee provision of a contract, the appellate court determines de novo whether the contractual attorney fee

---

[6]     Section 1717, subdivision (a), provides:  "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.  [¶] . . . [¶]  Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs of suit."

provision entitles the prevailing party to attorney fees"]; see *Exxess Electronixx v. Heger Realty Corp.* (1998) 64 Cal.App.4th 698, 705.)

There is no question the parties' intent as expressed in the introductory dependent clause in the attorney fee provision could have been expressed more clearly.[7] Nonetheless, "provisions of a contract will not be construed as conditions precedent in the absence of language plainly requiring such construction." (*Rubin v. Fuchs* (1969) 1 Cal.3d 50, 53; see *Alpha Beta Food Markets, Inc. v. Retail Clerks Union* (1955) 45 Cal.2d 764, 771 ["stipulations in an agreement are not to be construed as conditions precedent unless such construction is required by clear, unambiguous language"]; *JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 593-594 ["[b]ecause 'such conditions are not favored by the law, [they] are to be strictly construed against one seeking to avail [it]self of them'"].)

The language at issue in the Consulting Service Agreement certainly means that attorney fees are not recoverable if a dispute between the parties has been resolved by "legally binding mediation." But it requires rewriting the language actually used to go farther, as did the trial court, and construe that language to actually require resort to an alternate dispute resolution process as a condition to the recovery of fees. That is, rather than reading "if a legally binding mediation does not resolve legal disputes"—a condition that was satisfied in the case at bar—the trial court and Kern Health read the clause as if it provided, "if the parties participate in a legally binding mediation that does not resolve legal disputes"—a condition that was not satisfied. Although Kern Health and AMG could have written their agreement in that manner, they did not; and it is not our prerogative to extract from the language actually used a condition to the recovery of fees that is not clearly encompassed within the contract as drafted. (See generally Civ. Code, § 1644 ["[t]he words of a contract are to be understood in their ordinary and popular

---

[7]    As the trial court recognized, the agreement expressly provides it is to be considered as jointly drafted "and neither Party shall be viewed unfavorably by a court of law or other entity by virtue of drafting this document."

18

sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed"]; *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.* (2014) 59 Cal.4th 277, 288 [when interpreting a contract, courts "consider the '"clear and explicit' meaning of [the contract] provisions, interpreted in their 'ordinary and popular sense,' unless 'used by the parties in a technical sense or a special meaning is given to them by usage"'"].)

In addition, to construe the attorney fee provision as requiring participation in "legally binding mediation" as a precondition to the recovery of attorney fees would effectively negate the parties' fee agreement in its entirety:  The general concept of binding mediation is that the parties attempt to resolve their dispute with the assistance of a mediator; if they are unable to do so, the mediator issues a final—and binding—decision similar to an arbitration award.  (See *Bowers v. Raymond J. Lucia Companies, Inc.* (2012) 206 Cal.App.4th 724, 733-734 [binding mediation is a hybrid of mediation and arbitration]; Calkins, *Mediation:  The Radical Change from Courtroom to Conference Table* (2010) 58 Drake L.Rev. 357, 390 ["In binding mediation, the mediator will conduct a traditional mediation, including joint sessions, private caucuses, and the transmission of demands and offers between the parties.  If settlement is not reached, the mediator will decide the matter by reaching a fair settlement figure."].)  By definition, therefore, if the parties have participated in a legally binding mediation, the result will be an enforceable award; and further litigation to resolve the underlying dispute would be unnecessary.  A failed, legally binding mediation is an oxymoron.  We are required, if possible, to avoid such an interpretation of the parties' agreement.  (See Civ. Code, § 1641 ["[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other"]; *Advanced Network, Inc. v. Peerless Ins. Co*. (2010) 190 Cal.App.4th 1054, 1063-1064 ["'[w]e must give significance to every word of a contract, when possible, and avoid an interpretation that renders a word surplusage'"].)

Finally, that Kern Health sought attorney fees in its complaint without having first participated in any form of mediation does not, in itself, entitle AMG to recover attorney fees under section 1717. (See *M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 468-469 [party claiming attorney fees in pleading is not judicially estopped from denying an enforceable attorney fee provision at the conclusion of the case]; *Myers Building Industries, Ltd. v. Interface Technology, Inc.* (1993) 13 Cal.App.4th 949, 962, fn. 2.) Nonetheless, Kern Health's conduct before the dispute arose regarding the proper interpretation of the "legally binding mediation" language in the Consulting Service Agreement—its claim it would be entitled to an award of attorney fees if it prevailed in the litigation—is persuasive evidence that resort to binding mediation was not a condition precedent to such an award. (See *City of Hope National Medical Center v. Genentech, Inc.* (2008) 43 Cal.4th 375, 393 ["A party's conduct occurring between execution of the contract and a dispute about the meaning of the contract's terms may reveal what the parties understood and intended those terms to mean. For this reason, evidence of such conduct . . . is admissible to resolve ambiguities in the contract's language."]; *Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 753 ["'[t]he acts of the parties under the contract afford one of the most reliable means of arriving at their intention'"]; see also *Wolf v. Walt Disney Pictures & Television* (2008) 162 Cal.App.4th 1107, 1133-1134.)

The trial court's alternate ground for refusing to award attorney fees—the purported vagueness of the fee provision—is similarly without merit. It may well be that, without further specification of the procedures to be used, a requirement that the parties participate in binding mediation is too uncertain to enforce. (Compare *Lindsay v. Lewandowski* (2006) 139 Cal.App.4th 1618, 1623-1624 [refusing to enforce settlement agreement that called for binding mediation of certain payment terms] with *Bowers v. Raymond J. Lucia Companies, Inc.*, *supra*, 206 Cal.App.4th at p. 736 [parties' agreement calling for binding mediation sufficiently certain to be specifically enforceable].) But that was not the issue before the trial court. Whatever form of binding mediation Kern

Health and AMG may have intended, they both agree no such proceeding, however defined, took place. The remainder of the attorney fee provision is both clear and fully enforceable: The prevailing party in a superior court lawsuit to enforce or interpret the terms of the Consulting Service Agreement was entitled to recover its reasonable attorney fees.

b. *Demetre and Lewis's fee motion*

The trial court suggested Demetre and Lewis's motion for attorney fees was properly denied on the additional ground they were not parties to the Consulting Service Agreement and were not named as defendants in the breach of contract cause of action. However, in the operative first amended complaint Kern Health alleged AMG, on the one hand, and Demetre and Lewis, on the other hand, were alter egos and further alleged "unless all of the defendants are treated as a single entity and are held jointly and severally liable for the debts of each and all of them, an injustice will result." These allegations, combined with Kern Health's failure to dismiss them prior to entry of judgment, are sufficient to entitle Demetre and Lewis to recover attorney fees.

Case law is clear that Demetre and Lewis would have been entitled to attorney fees as prevailing parties on Kern Health's contract claim to the same extent as signatories to the agreement had they been directly sued for breach of contract on an alter ego theory. (See *Reynolds Metals Co. v. Alperson*, *supra*, 25 Cal.3d at pp. 128-129 ["Had plaintiff prevailed on its cause of action claiming defendants were in fact the alter egos of the corporation (citation), defendants would have been liable on the notes. Since they would have been liable for attorney's fees had plaintiff prevailed, they may recover attorney's fees pursuant to Section 1717 now that they have prevailed."]; *Pueblo Radiology Medical Group, Inc. v. Gerlach* (2008) 163 Cal.App.4th 826, 828-829 [applying *Reynolds Metals Co.*].) Even though Demetre and Lewis were not named in Kern Health's contract cause of action, the result here is the same: If Kern Health had prevailed on its contract claim against AMG, pursuant to Code of Civil Procedure section

21

187[8] the judgment in Kern Health's favor, including any award of attorney fees and costs, could have been amended to add Demetre and Lewis as additional judgment debtors as alter egos of AMG. (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 280, 289-290 [Code Civ. Proc., § 187 properly used to add judgment debtors on alter ego theory to enforce prevailing party's judgment for attorney fees and costs].)

As Kern Health emphasizes on appeal, it did not actively pursue its alter ego theory at trial and the jury was not asked to make any findings on the issue. Nonetheless, Kern Health successfully opposed Demetre and Lewis's oral motion for a nonsuit directed in part to its alter ego theory, arguing, "they're all one and the same is what the evidence has shown."[9] As a result, the alter ego allegations remained in the lawsuit; they were never voluntarily dismissed by Kern Health. (See § 1717, subd. (b) [no prevailing party when action has been voluntarily dismissed]; *Santisas v. Goodin, supra*, 17 Cal.4th

---

[8] Code of Civil Procedure section 187 provides, "When jurisdiction is, by the Constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given . . . ." The authority granted by section 187 includes the right to amend a judgment to add an alter ego of an original judgment debtor and thereby make the additional judgment debtor liable on the judgment. (*Highland Springs Conference & Training Center v. City of Banning* (2016) 244 Cal.App.4th 267, 280; *Toho-Towa Co., Ltd. v. Morgan Creek Productions, Inc.* (2013) 217 Cal.App.4th 1096, 1106.) "'Amendment of a judgment to add an alter ego 'is an equitable procedure based on the theory that the court is not amending the judgment to add a new defendant but is merely inserting the correct name of the real defendant. . . . "Such a procedure is an appropriate and complete method by which to bind new . . . defendants where it can be demonstrated that in their capacity as alter ego of the corporation they in fact had control of the previous litigation, and thus were virtually represented in the lawsuit." . . .' . . .'" [Citations.] 'The decision to grant an amendment in such circumstances lies in the sound discretion of the trial court. "The greatest liberality is to be encouraged in the allowance of such amendments in order to see that justice is done."'" (*Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 508; accord, *Danko v. O'Reilly* (2014) 232 Cal.App.4th 732, 736.)

[9] Kern Health then added that its noncontract-based causes of action naming Demetre and Lewis "will stand alone absent any of those alter ego allegations." The court denied the motion for nonsuit without comment.

22

at p. 617 ["[w]hen a plaintiff files a complaint containing causes of action within the scope of section 1717 (that is, causes of action sounding in contract and based on a contract containing an attorney fee provision), and the plaintiff thereafter voluntarily dismisses the action, section 1717 bars the defendant from recovering attorney fees incurred in defending those causes of action"].) That is sufficent under section 1717's principle of mutuality for Demetre and Lewis, like AMG, to be considered prevailing parties on Kern Health's contract claim.

c. *Allocation*

In a final argument AMG contends Kern Health's fraud claims were inextricably intertwined with its contract claims, including statements made concerning the results of its audit. The trial court erred, AMG asserts, when it observed, if it had awarded attorney fees, it would have apportioned fees among the causes of action.

The governing legal principle is clear, "Where a cause of action based on the contract providing for attorney's fees is joined with other causes of action beyond the contract, the prevailing party may recover attorney's fees under section 1717 only as they relate to the contract action. . . . [¶] Conversely, . . . '[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed." (*Reynolds Metals Co. v. Alperson*, *supra*, 25 Cal.3d at pp. 129-130; see *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 687 ["[a]pportionment is not required when the claims for relief are so intertwined that it would be impracticable, if not impossible, to separate the attorney's time into compensable and noncompensable units"]; accord, *Taylor, supra*, 222 Cal.App.4th at p. 1251.) However, no apportionment was made in this case; the court's general indication of what it would have done in different circumstances is not ripe for review. On remand the trial court will consider AMG, Demetre and Lewis's motions anew and determine in the first instance, under controlling case law, the fees to which they are entitled. (See *Holguin v. Dish Network LLC* (2014) 229 Cal.App.4th 1310, 1332 [analysis of the interplay between the plaintiff's various claims, the evidence

23

offered at trial and the reasonableness of the time spent on various aspects of trial preparation "are matters that are properly committed to the trial court's sound discretion"].)

## DISPOSITION

The judgment is reversed and the cause remanded with directions to the trial court to enter a new judgment in favor of AMG, Demetre and Lewis on all causes of action. The postjudgment order denying the motions for attorney fees is also reversed and that matter remanded with directions to award AMG, Demetre and Lewis their reasonable attorney fees as the prevailing parties on the contract cause of action after determining the extent to which, if at all, the fees incurred may be apportioned between the contract and noncontract causes of action. AMG, Demetre and Lewis are to recover their costs, including attorney fees, on appeal in an amount to be determined by the trial court.


PERLUSS, P. J.


We concur:



ZELON, J.


SEGAL, J.

SUPERIOR COURT OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES

CHATSWORTH COURTHOUSE

* * *

FILED
Superior Court of California
County of Los Angeles

JUN 09 2014

Sherri R. Carter, Executive Officer/Clerk
Vicky Keating ———— Deputy

KERN HEALTH SYSTEMS, a county health authority,

Plaintiff,

vs.

ALLIED MANAGEMENT GROUP SPECIAL INVESTIGATION UNIT, INC., a California corporation; DENNIS DEMETRE, an individual; LORI LEWIS, an individual

Defendants.

CASE NO. PC052482

SPECIAL VERDICT FORM

We, the jury, answer the questions submitted to us as follows:

## SECTION 1

### BREACH OF CONTRACT

1. Did ALLIED MANAGEMENT GROUP SPECIAL INVESTIGATION UNIT, INC. ("AMG") and KERN HEALTH SYSTEMS ("KHS") enter into a contract?

    YES: ✓

    NO: _____

    If your answer to Question No. 1 is YES, then answer Question No. 2. If your answer to Question No. 1 is NO, proceed to Section 2.

///
///
///
///
///
///
///

SPECIAL VERDICT FORM

2. Did KHS do all, or substantially all, of the significant things that the contract required it to do?

YES: ✓

NO: _____

OR

Was KHS excused from having to do all, or substantially all, of the significant things that the contract required it to do?

YES: _____

NO: _____

If your answer to Question No. 2 is YES as to either option, then answer Question No. 3. If your answer to Question No. 2 is NO as to both options, proceed to Section 2.

3. Did AMG fail to do something that the contract required it to do or unfairly interfere with KHS' right to receive the benefits of the contract?

YES: _____

NO: ✓

If your answer to Question No. 3 is YES, then answer Question No. 4. If your answer to Question No. 3 is NO, proceed to Section 2.

4. Was KHS harmed by that failure or interference?

YES: _____

NO: _____

If your answer to Question No. 4 is YES, then answer Question No. 5. If your answer to Question No. 4 is NO, proceed to Section 2.

5. What are KHS' damages, if any, caused by AMG's failure or interference?

$_____

Proceed to Section 2.

///
///
///
///

2

## SECTION 2

### PROFESSIONAL NEGLIGENCE

6. Was AMG, LORI LEWIS ("LEWIS"), or DENNIS DEMETRE ("DEMETRE") (collectively "Defendants") negligent?

As to AMG:

YES: _____

NO: ✓

As to LORI LEWIS:

YES: _____

NO: ✓

As to DENNIS DEMETRE:

YES: _____

NO: ✓

If your answer to Question No. 6 is YES as to ANY Defendant, then answer Question No. 7. If your answer to Question No. 6 is NO as to ALL Defendants, proceed to Section 3.

7. As to any Defendant for whom you answered "YES" to Question No. 6, was that Defendant's negligence a substantial factor in causing harm to KHS?

As to AMG:

YES: _____

NO: _____

As to LORI LEWIS:

YES: _____

NO: _____

As to DENNIS DEMETRE:

YES: _____

NO: _____

///

3

SPECIAL VERDICT FORM

27

If your answer to Question No. 7 is YES as to ANY Defendant, then answer Question No. 8. If your answer to Question No. 7 is NO as to ALL Defendants, proceed to Section 3.

8. What are KHS' total damages? Do not reduce the damages based on the fault, if any, of KHS.

$_____

If KHS has proved any damages, then answer Question No. 9. If KHS has not proved any damages, then proceed to Section 3.

9. Was KHS negligent?

YES: _____

NO: _____

If your answer to Question No. 9 is YES, then answer Question No. 10. If your answer to Question No. 9 is NO, then proceed to Section 3.

10. Was KHS' negligence a substantial factor in causing its harm?

YES: _____

NO: _____

If your answer to Question No. 10 is YES, then answer Question No. 11. If your answer to Question No. 10 is NO, then proceed to Section 3.

11. What percentage of responsibility for KHS' harm do you assign to the following? Insert a percentage for only those for whom you answered "YES" in Question No. 7 or 10:

KHS: _____

DEFENDANTS: _____

Proceed to Section 3.

///
///
///
///
///
///

4
SPECIAL VERDICT FORM

28

## SECTION 3

### INTENTIONAL MISREPRESENTATION

12. Did any of the Defendants make a false representation of an important fact to KHS?

As to AMG:

YES: ✓

NO: _____

As to LORI LEWIS:

YES: ✓

NO: _____

As to DENNIS DEMETRE:

YES: ✓

NO: _____

If your answer to Question No. 12 is YES as to ANY Defendant, then answer Question No. 13. If your answer to Question No. 12 is NO as to ALL Defendants, proceed to Section 4.

13. Did the Defendant(s) for whom you answered "YES" in response to Question No. 12 either know that the representation was false, or make the representation recklessly and without regard for its truth?

As to AMG:

YES: ✓

NO: _____

As to LORI LEWIS:

YES: ✓

NO: _____

As to DENNIS DEMETRE:

YES: ✓

NO: _____

///

If your answer to Question No. 13 is YES as to ANY Defendant, then answer Question No. 14 as to those Defendants. If your answer to Question No. 13 is NO as to ALL Defendants, proceed to Section 4.

14. Did the Defendant(s) for whom you answered "YES" in response to Question No. 13 intend that KHS rely on the representation?

As to AMG:

YES: ✓

NO: _____

As to LORI LEWIS:

YES: ✓

NO: _____

As to DENNIS DEMETRE:

YES: ✓

NO: _____

If your answer to Question No. 14 is YES as to ANY Defendant, then answer Question No. 15. If your answer to Question No. 14 is NO as to ALL Defendants, proceed to Section 4.

15. Did KHS reasonably rely on the representation of the Defendant(s) for whom you answered "YES" in response to Question No. 14?

As to AMG:

YES: ✓

NO: _____

As to LORI LEWIS:

YES: ✓

NO: _____

As to DENNIS DEMETRE:

YES: ✓

NO: _____

6
SPECIAL VERDICT FORM

If your answer to Question No. 15 is YES as to ANY Defendant, then answer Question No. 16. If your answer to Question No. 15 is NO as to ALL Defendants, proceed to Section 4.

16. Was KHS' reliance on Defendant(s)' representation a substantial factor in causing harm to KHS?

As to AMG:

YES: _____

NO: ✓

As to LORI LEWIS:

YES: _____

NO: ✓

As to DENNIS DEMETRE:

YES: _____

NO: ✓

If your answer to Question No. 16 is YES as to ANY Defendant, then answer Question No. 17. If your answer to Question No. 16 is NO as to ALL Defendants, proceed to Section 4.

17. What are KHS' damages, if any?

Amount paid by KHS as a result of the misrepresentation, if any: $ _____

Proceed to Question No. 18.

///
///
///
///
///
///
///
///

7

31

18. Did Defendant(s) make the representation with malice, oppression, or fraud?

As to AMG:

YES: _____

NO: _____

As to LORI LEWIS:

YES: _____

NO: _____

As to DENNIS DEMETRE:

YES: _____

NO: _____

Proceed to Section 4.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

8
SPECIAL VERDICT FORM

32

## SECTION 4

### NEGLIGENT MISREPRESENTATION

19. Did ANY of the Defendants make a false representation of an important fact to KHS?

As to AMG:

YES: ✓

NO: _____

As to LORI LEWIS:

YES: ✓

NO: _____

As to DENNIS DEMETRE:

YES: ✓

NO: _____

If your answer to Question No. 19 is YES as to ANY Defendant, then answer Question No. 20. If your answer to Question No. 19 is NO as to ALL Defendants, proceed to Section 5.

20. Did the Defendant(s) for whom you answered "YES" to Question No. 19 honestly believe that the representation was true when it was made?

As to AMG:

YES: ✓

NO: _____

As to LORI LEWIS:

YES: ✓

NO: _____

As to DENNIS DEMETRE:

YES: ✓

NO: _____

///
///

33

If your answer to Question No. 20 is YES as to ANY Defendant, then answer Question No. 21. If your answer to Question No. 20 is NO as to ALL Defendants, proceed to Section 5.

21. Did the Defendant(s) for whom you answered "YES" to Question No. 20 have reasonable grounds for believing the representation was true when it was made?

As to AMG:

YES: ✓

NO: _____

As to LORI LEWIS:

YES: ✓

NO: _____

As to DENNIS DEMETRE:

YES: ✓

NO: _____

If your answer to Question No. 21 is YES as to ANY Defendant, then answer Question No. 22. If your answer to Question No. 21 is NO as to ALL Defendants, proceed to Section 5.

22. Did the Defendant(s) for whom you answered "YES" to Question No. 21 intend that KHS rely on the representation?

As to AMG:

YES: ✓

NO: _____

As to LORI LEWIS:

YES: ✓

NO: _____

As to DENNIS DEMETRE:

YES: ✓

NO: _____

10

SPECIAL VERDICT FORM

34

If your answer to Question No. 22 is YES as to ANY Defendant, then answer Question No. 23. If your answer to Question No. 22 is NO as to ALL Defendants, proceed to Section 5.

23. Did KHS reasonably rely on the representation of ANY Defendant(s) for whom you answered "YES" to Question No. 22?

As to AMG:

YES: ✓

NO: _____

As to LORI LEWIS:

YES: ✓

NO: _____

As to DENNIS DEMETRE:

YES: ✓

NO: _____

If your answer to Question No. 23 is YES as to ANY Defendant, then answer Question No. 24. If your answer to Question No. 23 is NO as to ALL Defendants, proceed to Section 5.

24. Was KHS' reliance on Defendant(s)' representation a substantial factor in causing harm to KHS?

As to AMG:

YES: ✓

NO: _____

As to LORI LEWIS:

YES: ✓

NO: _____

As to DENNIS DEMETRE:

YES: ✓

NO: _____

If your answer to Question No. 24 is YES as to ANY Defendant, then answer Question No. 25. If your answer to Question No. 24 is NO as to ALL Defendants, proceed to Section 5.

25. What are KHS' damages, if any?

Amount paid by KHS as a result of the misrepresentation, if any: $ 1,380,000. —

Proceed to Section 5.

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

12

SPECIAL VERDICT FORM

36

## SECTION 5

### UNFAIR BUSINESS PRACTICES

26. Did any of the Defendants make misrepresentations to KHS with the intention of causing KHS to make payments to AMG?

> As to AMG:
>
> > YES: _____
> >
> > NO: ✓
>
> As to LORI LEWIS:
>
> > YES: _____
> >
> > NO: ✓
>
> As to DENNIS DEMETRE:
>
> > YES: _____
> >
> > NO: ✓
>
> If your answer to Question No. 26 is YES as to ANY Defendant, then answer Question No. 27. If your answer to Question No. 26 is NO as to ALL Defendants, answer NO further questions and have the presiding juror sign and date this form.

27. Did KHS reasonably rely to its detriment on the misrepresentations of the Defendant(s) for whom you answered "YES" in response to Question No. 26?

> As to AMG:
>
> > YES: _____
> >
> > NO: _____
>
> As to LORI LEWIS:
>
> > YES: _____
> >
> > NO: _____
>
> As to DENNIS DEMETRE:
>
> > YES: _____
> >
> > NO: _____

///

13
SPECIAL VERDICT FORM

37

If your answer to Question No. 27 is YES as to ANY Defendant, then answer Question No. 28. If your answer to Question No. 27 is NO as to ALL Defendants, answer NO further questions and have the presiding juror sign and date this form.

28. In what amount, if any, did the Defendant(s) for whom you answered YES in response to Question No. 27 profit from KHS' reliance on the Defendant(s) misrepresentations?

AMG: $_____

LORI LEWIS: $_____

DENNIS DEMETRE: $_____

Dated: 6/9/2014          By: _____
                             Presiding Juror

After this verdict form has been signed, notify the clerk or courtroom assistant that you are ready to present your verdict in the courtroom.

14
SPECIAL VERDICT FORM